THE STATE OF IOWA, Appellee, v. LOU FOLEY, Appellant.

1. **Embezzlement**: EVIDENCE: PRACTICE. Where an indictment for embezzlement is based upon the employment of one as agent for the sale of certain personal property to a person named, proof, on the part of the state, of authority to sell to any person, is not such a variance as will support a motion for verdict in favor of the defendant.

2. ——— : ——— : ———. Such charge will be considered established where the evidence shows the receipt of the property in question by the accused as agent for the person named as principal, and that upon demand, at a time when the principal was entitled to an accounting, he failed and refused to account for the same.

3. ——— : NEWLY-DISCOVERED EVIDENCE: NEW TRIAL. A party is not entitled to a new trial upon the ground of newly-discovered evidence where the facts upon which the motion therefor is based are of such a nature that they must have been known to him before trial, and it does not appear that the necessary diligence has been used to secure proof thereof, nor that any postponement of the trial on that account had been asked.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

FRIDAY, OCTOBER 10, 1890.

ON October 10, 1889, the grand jury returned an indictment charging the defendant with the crime of larceny by embezzlement of two diamond eardrops, of the value of one hundred and fifty dollars, committed on the twenty-seventh day of September, 1889. This case was tried to a jury; and, at the conclusion of the testimony for the state, the defendant moved the court to instruct the jury to return a verdict of not guilty on

the grounds: *First*, that there was a fatal variance between the indictment and evidence as to the extent of defendant's agency; *second*, that the indictment does not show that the conversion of the diamonds was during the capacity of agent on the part of the defendant; *third*, that there has been no conversion shown; and, *fourth*, that the evidence was not sufficient to put the defendant upon his defense. This motion being overruled, and the case being fully submitted, the jury returned a verdict of "Guilty as charged." The defendant moved to set aside the verdict, and for a new trial, on the ground that the verdict is contrary to the evidence and the instructions, and on the further ground of newly-discovered evidence. This motion being overruled, judgment was pronounced upon the verdict. To all of which defendant excepted, and from which he appeals.

*McHenry & McHenry*, for appellant.

*John Y. Stone*, Attorney General, for the State.

GIVEN, J.—I. The employment or agency charged in the indictment was to sell the diamonds to J. R. Hurlbut. There was evidence tending to show such agency, and the fact that there was other evidence tending to show authority to sell to any person was not such a variance as to warrant the court in sustaining defendant's motion for verdict.

1. EMBEZZLE-
MENT: evi-
dence: prac-
tice.

II. The indictment charges, and there was testimony tending to show, a conversion during the time that defendant was acting as agent for Kennedy. There was evidence on the part of the state showing that defendant had received the diamonds as agent for Kennedy, as charged; and that, upon demand, at the time when Kennedy was entitled to an accounting, the defendant had failed and refused to account for the same. Under the evidence adduced on behalf of the state there was no error in overruling defendant's motion for verdict, and in putting him upon his defense.

2. THE same.

III.   The next question presented is, whether the court erred in overruling the defendant's motion to set aside the verdict, and for a new trial.   The testimony shows without conflict that, on the twenty-seventh day of September, 1889, one G. W. Kennedy, of Chicago, a dealer in diamonds, was in the city of Des Moines, and met with the defendant Foley, who represented that he could sell a pair of diamond eardrops to one Hurlbut, whereupon Kennedy gave to Foley a pair of diamond eardrops of the value of one hundred and fifty dollars, under an agreement that Foley was to sell them to Hurlbut, for Kennedy, and to have, as compensation, all that he could get over one hundred and fifty dollars.   It further appears that Foley failed to return the diamonds or their value to Kennedy, the owner, and, on demand, claimed that he had given them to another party for inspection, and that they had not been returned to him. It appears that Foley had previously sold similar articles for Kennedy.   Frank Mathis testified that he was present when Kennedy asked Foley for some diamonds he had given him, and Foley said he had given them to some one to examine, and had not got them back yet, but would get them in the morning ; that he ( Mathis ) then called Foley to one side, and asked him about the diamonds ; that he said "he helped Kennedy put up a job, and never got anything out of him, and he said he had sold the diamonds, and had the stuff in his pocket for them, and was going to keep it."   James Murphy, whom Mathis says was present, though examined as a witness, was not inquired of with respect to this conversation with Mathis.   Defendant introduced some testimony tending to show that Kennedy authorized Foley to sell the eardrops to any person, and that if any person doubted his word about them to let them take the eardrops to a jeweler or expert.

In support of his motion on the grounds of newly-discovered evidence, the defendant filed the affidavit of one James Clark, who stated that he is a married man,

3. ——: newly-discovered evidence: new trial.

and resides in Des Moines; that on the twenty-seventh day of September, 1889, he received from defendant, on West Locust and Fifth streets, a box containing two diamond eardrops, for the purpose of having them examined as to their value; that he did not find anyone to consult as to their value that night, and that on that night he became intoxicated, and the next thing he knew he was in Davenport, from whence he went to Chicago and Milwaukee, continuing in a state of intoxication for six weeks, and did not return to Des Moines until December 11, 1889, which was after defendant's trial; that at Davenport he put the diamonds into his valise, and that they had either been lost or stolen. One Bradshaw made affidavit that he was a detective, and had made search for Clark, at the instance of the defendant, and Kennedy, the prosecuting witness, made affidavit that Clark had paid to him, through another, the value of the diamond eardrops.

Assuming Clark's statement to be true, it was clearly not newly-discovered evidence to the defendant. If it be true that he gave the diamonds to Clark, on Locust street, September 27, he certainly knew who Clark was, and that he had failed to return the diamonds to him, or to account for them. All that Clark could have testified to was known to the defendant at and before his trial, and yet it does not appear that he asked any postponement of the trial for the purpose of procuring Clark's testimony. Three witnesses testified to being with defendant on Locust street, Des Moines, in September, 1889, when a stranger, whom defendant called Clark, received a box containing diamonds from Foley. It is unnecessary that we state more particularly the testimony. Our conclusion is that it fully sustains the verdict; and that the verdict is in harmony with the evidence and the instruction given by the court. The testimony was not only not newly discovered, but diligence, such as the law requires, is not shown. The judgment of the district court should be AFFIRMED.