# STATE OF INDIANA v. ENSLEY.

[No. 21,920. Filed January 10, 1912. Rehearing denied May 9, 1912.]

1. STATUTES.—*Construction.—Legislative Intent.*—In ascertaining the intent of an act, courts will look to the letter thereof, to the mischief aimed at, to other statutes, and to the common law. p. 489.

2. STATUTES.—*Reënactment.—Construction.—Adoption of Construction.*—Where a statute has been construed by the courts, and is thereafter substantially reënacted, the legislature thereby adopts such construction, unless the contrary is clearly shown by the language of the act. p. 489.

3. STATUTES.—*Construction.—Statute Adopted from Foreign State.* —Where a statute is adopted from a foreign state, the construction thereof by the courts of such state is followed. p. 490.

4. EMBEZZLEMENT. — *Nature of Offense.* — Embezzlement is the fraudulent conversion of property, either actual or constructive, by a person to whom it has been entrusted. p. 490.

5. STATUTES. — *Reënactment.—Construction.—Embezzlement Statute.*—Where a decision has not been overruled in which the court in construing the act of March 5, 1883 (§2021 Burns 1901, Acts 1883 p. 106), reached the conclusion that it affirmatively required that a county treasurer, at the expiration of his term of office, pay over to his successor all money remaining in his hands, which was received by him in his official capacity, no matter to whom it may belong, and that it made such officer failing to do so guilty of embezzlement, and that it made the successor guilty of a like offense for failure or refusal, when called upon to do so, to pay to the persons entitled thereto the funds received from his predecessor, the construction was adopted in the reënactment of such statute (§2284 Burns 1908, Acts 1905 p. 584). p. 491.

6. STATUTES.—*Construction.—Ambiguous Statute.*—Where a statute is ambiguous, it will, if possible, be given such construction as will prevent absurdity or injustice. p. 492.

7. EMBEZZLEMENT.—*Failure of County Treasurer to Pay Over Money Received from Predecessor. — Demand.—Statute.—Construction.*—The phrase "when called on to do so" as used in §2284 Burns 1908, §391 Acts 1905 p. 584, is the equivalent of the requirement of a demand, and a county treasurer could not be guilty of embezzlement for failure to pay the funds received from his predecessor to the persons entitled thereto until after proper demand. pp. 492, 494.

8. EMBEZZLEMENT.—*Failure of County Treasurer to Pay Over Public Funds to Successor. — Demand. — Statute. — Construction. —*

Where a county treasurer feloniously fails to turn over to his successor public funds to which the successor is entitled, such failure constitutes embezzlement under §2284 Burns 1908, §391 Acts 1905 p. 584, without a demand by his successor, since the statute makes it his duty to pay them at a particular time to a particular person, and fixes a penalty for his failure so to do. pp. 492, 494.

9. CONVERSION.—*Refusal to Deliver on Demand.*—A refusal to deliver on demand is not a conversion, but only evidence thereof. p. 495.

10. CONVERSION.—*Demand.*—*Acts Constituting Conversion Without Demand.*—Where no time is fixed for the delivery of property, a demand is necessary to terminate a lawful possession thereof, but where the time of delivery and the person to whom the delivery shall be made are fixed by statute, the retention of the property after such time amounts to a conversion thereof, and no demand is necessary. p. 496.

11. EMBEZZLEMENT.—*Indictment.*—*Sufficiency.*—Where, in a prosecution for embezzlement, there was no necessity for proof of a demand, the indictment was sufficient without an averment that a demand had been made. pp. 497, 499.

12. STATUTE. — *Conflict.*—*Control.*—*Conflict in Sections of Same Act.*—In case of conflict in statutes the later will control, and where two sections of a statute have been enacted for the first time, the latter of the two, by reason of its position in the act, would control in case of irreconcilable conflict. p. 498.

13. EMBEZZLEMENT. — *Indictment.* — *Necessary Averments.*—It is necessary in charging embezzlement, to aver the felonious conversion of the property of another and to negative ownership in the person charged with the offense. p. 499.

14. EMBEZZLEMENT.—*Indictment.*—*Embezzlement by County Treasurer.*—*Averment as to Ownership of Money.*—*Sufficiency.*—An indictment, charging a county treasurer with embezzlement for failing to turn over to his successor public money in his possession, which averred that "said sum of money had come into the hands of" the accused "as such treasurer, by virtue of his said office of treasurer," and which money he, "at the time of the expiration of his term of office then and there had in his hands as such treasurer of said county," excluded the theory that the defendant might have been the owner of the money, and was a sufficient averment of the ownership without specifically describing the funds and the several owners thereof. pp. 499, 501.

15. CRIMINAL LAW.—*Indictment.*—*Certainty.*—No greater certainty is required in an indictment than that it should be sufficiently certain to inform the court and jury of what they are to try, and

the defendant of the character of the proof to be brought against him, and to bar another prosecution for the same offense. p. 501.

16. CONSTITUTIONAL LAW. — *Imprisonment for Debt.* — *Embezzlement.*—*Statutes.*—*Construction.*—Section 2284 Burns 1908, §391 Acts 1905 p. 584, making a treasurer guilty of embezzlement who fails to turn over to his successor public funds to which the successor is entitled, must be construed as if such failure were therein expressly characterized as felonious and fraudulent, and when so construed it is not in conflict with Constitution, article 1, §22, which prohibits imprisonment for debt except in case of fraud. p. 502.

17. STATUTES.—*Criminal Statute.*—*Repeal by Implication.*—A criminal statute is held to be repealed by implication only when the new statute covers the whole subject-matter of the old, adds new offenses and prescribes different penalties. p. 503.

18. STATUTES.—*Repeal by Implication.*—*Embezzlement Statute.*—*Depository Act.*—The depository act of 1907 (§7522 et seq. Burns 1908, Acts 1907 p. 391) does not repeal §2284 Burns 1908, §391 Acts 1905 p. 584. p. 503.

From Criminal Court of Marion County (37,311); *Ovid B. Jameson*, Special Judge.

Prosecution by the State of Indiana against Oliver P. Ensley. From a judgment quashing the indictment, the State appeals. *Reversed.*

*Thomas M. Honan*, Attorney-General, *Thomas H. Branaman*, *Edwin Corr* and *James E. McCullough*, for the State.

*Frank S. Roby*, *Ward H. Watson* and *Elias D. Salsbury*, for appellee.

MORRIS, C. J.—Appellee, a former treasurer of Marion county, was charged by indictment with the crime of embezzlement, under §2284 Burns 1908, Acts 1905 p. 584, §391.

The indictment, omitting caption and signature, is as follows: "The grand jurors for the county of Marion and State of Indiana, upon their oaths present that on the — day of November, 1904, Oliver P. Ensley was duly elected to the office of treasurer of the county of Marion in the State of Indiana for the term of two years, which said term commenced on the 1st day of January, 1906, and ended on the 31st day of December, 1907. That said Oliver P. Ensley

was duly commissioned, gave bond and duly qualified as such treasurer of said county and entered upon the discharge of the duties of the office of treasurer of said county on the 1st day of January, 1906, and was then and thereafter the duly elected, qualified and acting treasurer of said county and discharged the duties of treasurer of said county until the 31st day of December, 1907, at which said date the said term of office of said Oliver P. Ensley as such treasurer of Marion county expired. That on the — day of November, 1906, one Edward J. Robison was duly elected to said office of treasurer of said county of Marion for the term of two years, which said term commenced on the 1st day of January, 1908. That said Edward J. Robison was duly commissioned, and on the 24th day of December, 1907, gave bond, duly qualified and on the 1st day of January, 1908, duly entered upon the discharge of the duties of said office of treasurer of Marion county as the successor of said Oliver P. Ensley, the then incumbent of said office of treasurer of said county. That at the time of the expiration of the said term of office of the said Oliver P. Ensley as such treasurer, the said Oliver P. Ensley then and there surrendered said office of treasurer to the said Edward J. Robison and at the time of the surrender of said office of treasurer as aforesaid the said Oliver P. Ensley then and there had in his hands as such treasurer of said county the sum of $20,000 in money of the value of $20,000, which said sum of money had come into the hands of said Oliver P. Ensley as such treasurer by virtue of his said office of treasurer and which sum was then and there due from the said Oliver P. Ensley as treasurer as aforesaid to his successor in office, the said Edward J. Robison as treasurer of said county as aforesaid; that the said Oliver P. Ensley did then and there unlawfully, feloniously and fraudulently fail, neglect and refuse to pay over said $20,000 or any part thereof to the said Edward J. Robison although said Edward J. Robison was entitled to receive the same and was ready and willing to

receive the same, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

The defendant filed a motion to quash the indictment, for the alleged reasons that it did not charge an offense, because it failed to aver a demand, and because the ownership of the money was not sufficiently averred. The lower court sustained the motion to quash, because, as we are informed by appellee's brief, no demand was averred. This appeal, prosecuted by the State, is based on the alleged error of the court in sustaining this motion.

The indictment was returned under §391 of an act concerning public offenses, approved March 10, 1905 (Acts 1905 p. 584, §2284 Burns 1908). This was a substantial reenactment of an act approved March 5, 1883 (Acts 1883 p. 106, §2021 Burns 1901). Section 391 of the act of 1905, *supra*, is as follows: "It shall be the duty of each clerk of the circuit court, sheriff and treasurer of each county in this State, and of every other county, state, township, city or town officer in this State receiving money in his official capacity, at the expiration of his term of office, to pay over to his successor in office all moneys of every description, to whomsoever due, remaining in his hands at the expiration of such term, taking the receipt of such successor therefor; and such successor and his sureties shall be liable therefor on his official bond, as if the same had been originally collected by him; and any clerk, treasurer, sheriff or other such county, state, township, city or town officer, so failing to so pay over such moneys, and any such successor to any clerk, treasurer, sheriff or other such officer who shall fail to pay over any such moneys to parties entitled to receive the same, *when called on to do so,* shall be deemed guilty of embezzlement, and, on conviction, shall be fined in any sum not exceeding one thousand dollars, and be imprisoned in the state prison not less than one year nor more than five years."

It is claimed by appellee that the italicized phrase, "when called on to do so," qualifies not only the immediately preceding clause, "and any such successor to any * * * treasurer * * * who shall fail to pay over any such moneys to parties entitled to receive the same," but also the clause preceding the latter, which reads, "and any * * * treasurer * * * so failing to so pay over such money," and, therefore, no offense is charged, unless it is averred in the indictment that the defendant failed to pay to his successor after he was "called on to do so."

On the other hand, the Attorney-General contends that the italicized phrase qualifies only the clause immediately preceding it, and the statute defines two offenses, viz., the failure of a retiring officer to pay to his successor, at the expiration of his term, money then remaining in his hands, and the failure of the successor to pay over any such moneys to parties entitled thereto, on demand, or "when called on to do so."

It is admitted by counsel for appellee that the treasurer's failure to pay to his successor money remaining in his hands, at the expiration of his term, renders him liable on his bond without demand. *Foster* v. *State, ex rel.* (1899), 22 Ind. App. 471, 53 N. E. 1095; *Boyd* v. *State, ex rel.* (1908), 42 Ind. App. 243, 84 N. E. 350. These cases hold that the law itself, not the bringing of the suit, makes the demand.

Counsel also admit that the reënactment of the act of 1905, *supra,* did not substantially change the statute as originally enacted in 1883, so far as treasurers are concerned. On this subject they say: "By §391 of this act [Acts 1905 p. 584, §2284 Burns 1908], the act of 1883 [Acts 1883 p. 106, §2021 Burns 1901] was revived and reënacted, the principal change made by the revision was to make all officers liable to the penalty, instead of only the clerks, sheriffs and treasurers. *As to county treasurers failing to pay over moneys, there was no substantial change.*" (Italics ours throughout opinion.)

In our opinion, aside from broadening the scope of the act so as to apply to all officers, the slight changes made were such only as to evidence the adoption by the legislature of the construction of the act given it by this court in *State* v. *Wells* (1887), 112 Ind. 237, 13 N. E. 722.

In *State* v. *Mason* (1886), 108 Ind. 48, 8 N. E. 716, the indictment was returned in May, 1885, the treasurer's term of office expired in November, 1882, and demand was made on the treasurer in July, 1883. In holding that the prosecution was barred by the two-year statute of limitations, this court said: "The statute of limitations began to run when Mason failed to pay over the money in his hands to his successor in office, and the alleged subsequent demands and refusals did not take any of the counts out of the operation of that statute." 12 Cyc. 255.

Of course, the General Assembly may make the commission of the offense to depend on the condition precedent of a failure to comply with a demand. The question 1. here is whether or not the statute expressly, or by necessary implication, requires it. In ascertaining the intent of the act, courts will look to the letter thereof, to the mischief aimed at, to other statutes, and to the common law. *State Board, etc.,* v. *Holliday* (1898), 150 Ind. 216, 49 N. E. 14, 42 L. R. A. 826; *City of New Albany* v. *Stier* (1905), 34 Ind. App. 615, 72 N. E. 275. Another familiar rule of statutory 2. construction, thoroughly settled, is that where a statute has been construed by the courts of a state, and is thereafter substantially reënacted, the legislature thereby adopts such construction, unless the contrary is clearly shown by the language of the act. *Board, etc.,* v. *Conner* (1900), 155 Ind. 484, 58 N. E. 828; *Hilliker* v. *Citizens St. R. Co.* (1899), 152 Ind. 86, 52 N. E. 607; *State, ex rel.,* v. *Swope* (1855), 7 Ind. 91; *Dill* v. *Fraze* (1907), 169 Ind. 53, 79 N. E. 971; *McIntyre* v. *State* (1908), 170 Ind. 163, 83 N. E. 1005; *Rupel* v. *Ohio Oil Co.* (1909), 172

Ind. 300, 88 N. E. 508; *Strange* v. *Board, etc.* (1910), 173 Ind. 640, 91 N. E. 242; *Smith* v. *Biesiada* (1910), 174 Ind. 134, 90 N. E. 1009. And where a statute is adopted from a foreign state, the construction thereof by the courts

3. of such state, is followed. *Bowman* v. *Conn* (1856), 8 Ind. 58; *City of Laporte* v. *Gamewell, etc., Tel. Co.* (1896), 146 Ind. 466, 45 N. E. 588, 35 L. R. A. 686, 58 Am. St. 359; *Robertson* v. *Ford* (1905), 164 Ind. 538, 74 N. E. 1.

Embezzlement is the fraudulent conversion of property by a person to whom it has been entrusted. *State* v.

4. *Winstandley* (1900), 155 Ind. 290, 58 N. E. 71. There must be a conversion, but this may be either actual or constructive.

In *State* v. *Wells* (1887), 112 Ind. 237, 13 N. E. 722, this court construed this statute, and, in the course of its opinion, on page 240 it said: "The act of 1883 has relation to the duties of officers at the expiration of their terms of office. That act affirmatively requires all county clerks, sheriffs and treasurers, and every other officer, whether he be a state, county or municipal officer, who receives money in his official capacity, to pay over all such moneys as may remain in his hands at the expiration of his term, no matter to whom it may belong, to his successor in office, and take his receipt therefor. It also makes any county clerk, sheriff, or treasurer, who fails to pay over to his successor as required, guilty of embezzlement, and it makes the successor guilty of the like offense, in case he fails or refuses, *when called upon to do so,* to pay the money thus received by him to the persons entitled to it. Under this latter act clerks, sheriffs and treasurers are not liable to punishment for failing or refusing to pay money, or deliver property, or choses in action, to the persons to whom they may belong, at any intermediate period before the expiration of their terms, except it be money turned over to them by their predecessors in office. It may be supposed that the legislature was cognizant of the fact that county clerks, sheriffs and treasurers become the

custodians of funds and property, by virtue of their re-
spective offices, which belong to individuals, and it may have
been supposed that instances might arise, or probably have
arisen, where officers of the class mentioned would retain
such moneys or property in their own possession at the ex-
piration of their terms, instead of turning it over to their
successors in office. Thus it would follow that moneys and
property which should be kept in the custody and under the
protection of a public officer, in a public office, would be
subject to the vicissitudes and perils of being in the custody
and use of private individuals who might or might not be
readily accessible to the persons entitled to it. This was the
mischief at which the act of March 5, 1883, was aimed. The
effect and purpose of that act was to make it the duty of all
officers to turn over to their successors all moneys remaining
in their hands at the expiration of their terms, and to pun-
ish the officers therein named for failing to comply with
their duties, as prescribed by that act.''

In the above case, this court was called on to determine
whether the act of March 5, 1883 (Acts 1883 p. 106, §2021
Burns 1901) repealed, by implication, §1943 R. S.
5.  1881, Acts 1881 (s. s.) p. 174, and to decide that ques-
tion it was necessary to determine the subject-matter,
the offenses denounced, and the penalties prescribed in both
acts. The conclusion reached by the court was that the
act of 1883, supra, affirmatively requires a county treas-
urer, at the expiration of his term of office, to pay
over to his successor all money remaining in his hands, which
was received by him in his official capacity, no matter to
whom it may belong, and it makes such officer, failing so to
pay over such funds to his successor, guilty of embezzlement;
and it makes the successor guilty of the like offense in case he
fails or refuses, when called on to do so, to pay to the persons
thereto entitled the funds received by him from his prede-
cessor.

This decision was never overruled, and the reenactment of

the statute in 1905 (Acts 1905 p. 584, §2284 Burns 1908), adopted the construction given it by this court in that case.

In view of the two offenses created by the act, and the intention of the legislature in enacting the law, as determined by this court in the above case, is a demand necessary?

The law does not require the doing of useless things. Where a statute is ambiguous, it will, if possible, be given such construction as will prevent absurdity or injus-

6. tice. *Indianapolis Union R. Co.* v. *Waddington* (1907), 169 Ind. 448, 82 N. E. 1030; *Mayor, etc.,* v. *Weems* (1854), 5 Ind. 547; *State* v. *Sopher* (1901), 157 Ind. 360, 61 N. E. 785; *Haggerty* v. *Wagner* (1897), 148 Ind. 625, 48 N. E. 366, 39 L. R. A. 384; Sutherland, Stat. Constr. §324.

It may be conceded that the phrase "when called on to do so" is the equivalent of the requirement of a demand. In considering the duty enjoined on the successor, to

7. pay the funds received from his predecessor to the persons entitled thereto, the propriety, and even the necessity of a demand is apparent. The law requires the county treasurer to receive all money coming to the county, and to disburse it on the proper orders issued and attested by the auditor, but the law enjoins no duty on the treasurer to pay such orders until presented to him at his office provided for him by the board of commissioners. 1 R. S. 1852 p. 499, §§9476, 9482-9484 Burns 1908, §§5912, 5918-5920 R. S. 1881. Consequently, before the person entitled to money from the county treasury has presented for payment a proper order attested by the auditor, the treasurer has violated no duty prescribed by the law, and he could not be guilty of embezzlement of such funds, until he should fail, after presentation of the order and demand for its payment.

But here, the offense charged is the felonious failure of the treasurer to turn over to his successor public funds to

8. which the successor is entitled. The duty to pay them, at a particular time, to a particular person, is

expressly set forth in the statute. The statute itself demands the performance of the duty, and fixes a penalty for the felonious failure to do it. A demand by the successor could in noway add to or affect the retiring officer's duties, and, so far as carrying into effect the purpose of the legislature in enacting the law is concerned, would be a mere idle ceremony, because such demand would be merely a recital of the terms of the statute. But much more is involved in this interpretation of the statute than the doing of a needless act. The purpose of the legislature in enacting the statute, as set forth in the portion of the opinion above quoted, in *State* v. *Wells, supra,* would be almost entirely defeated by adopting the theory of appellee's counsel. Under such contention, the retiring officer might fraudulently retain public funds for an indefinite length of time. The shortage might never be discovered. Even when discovered, by expert examination, or otherwise, no duty to make a demand is enjoined on the successor, and hence he would incur no penalty by remaining silent. It would be absurd to impute to the legislature the intention to make the application of the act to depend on the uncontrolled will of the successor. But this would not be all. On such theory, a retiring officer might intentionally and fraudulently convert public funds to his own use, use them until some indefinite time when his defalcation might be discovered, and then, if his successor should see fit to make a demand, all he would have to do would be to make payment in a reasonable time thereafter, and thus escape the penalty of the statute. On this theory, the only risk assumed by a retiring officer, in fraudulently converting to his own use all the public funds in his hands at the termination of his term of office, would be his lack of financial ability to meet the demand when made, and the act could never practically apply to the felonious defalcations of officers except when such officers might be so unfortunate as to be insolvent. Where the relief sought by the enactment of the law is, as here, the better safe-guarding

of public funds against the conversion thereof by dishonest officials, it would be absurd to impute to the lawmaking body the further intention of making public funds the prey of such officers.

In the case of *State* v. *Leonard* (1909), 56 Wash. 83, 105 Pac. 163, the supreme court of Washington, in passing on a similar question, used this language: ''The appellant's third proposition is that, where the moneys are collected in a fiduciary capacity, proof of demand by one authorized to receive payment of such funds is necessary before there can be a conviction for criminal conversion. The appellant has cited no authorities to sustain this proposition, nor do we think that any can be found. It would be a direct encouragement to laxity in official duty, if not to absolute dishonesty, to put any such construction upon the law. Under such construction the officer could retain money that came into his possession for an indefinite length of time. If afterwards, by experting the books or from any investigation, it was found that such money had been retained, all he would have to do would be to pay the same upon demand made. If the law were to be construed in this manner, the public funds would become a prey to plunderers and dishonest officers.''

Considering the statute as a whole, and the position therein of the phrase in controversy, and considering especially the construction of the statute in *State* v. *Wells,*

7. *supra,* which is binding on the court because of the reënactment, we are of the opinion that the phrase ''when called on to do so'' applies only to the offense committed by a successor in feloniously failing to pay to persons entitled thereto money received by him from his predecessor; and where, as here, the offense charged is the

8. felonious failure of the officer to pay over to his successor, at the expiration of his term, public funds remaining in his hands, the offense is complete without any demand, and none need be averred.

Counsel for appellee, in their brief, cite *State* v. *Hebel* (1880), 72 Ind. 361, as authority that a previous demand is necessary. That case arose under §1943 R. S. 1881, Acts 1881 (s. s.) p. 174, which, in express terms required a demand. Counsel also cite *State* v. *Adamson* (1888), 114 Ind. 216, 16 N. E. 181, on the same theory. That case involved a charge against a defaulting administrator under §1952 R. S. 1881, §2293 Burns 1908, which also expressly required a demand. The correctness of both decisions is undoubted, but they have no application to a statute which requires no demand. For the same reason *State* v. *Munch* (1875), 22 Minn. 67, *State* v. *Bancroft* (1879), 22 Kan. 170, 106 N. W. 931, and *State* v. *McKinney* (1906), 130 Iowa 370, 106 N. W. 931, cited by appellee, are not in point here.

It is claimed by appellee's counsel that, regardless of the application of the phrase in the statute, "when called on to do so," where, as here, the indictment does not allege an actual conversion, the allegation of a demand is necessary.

A refusal to deliver on demand is not a conversion, but only evidence thereof. *State* v. *Mason* (1886), 108 Ind. 48, 8 N. E. 716; *Gordon* v. *Stockdale* (1883), 89 Ind. 240; Gillett, Crim. Law §417.

In *State* v. *Mason, supra,* this court used the following language: "The fraudulent failure or refusal to account for and pay over the funds in his hands being established, no proof of a subsequent demand and refusal would have been required. A refusal to deliver upon demand is not a conversion. It is only evidence of a conversion, and hence in such a case proof of a subsequent demand and refusal would have afforded only redundant evidence of the misappropriation or conversion constituting the crime charged. 2 Bishop, Crim. Law §373; *Commonwealth* v. *Tuckerman* [1857], 10 Gray 173; *Gordon* v. *Stockdale* [1883], 89 Ind. 240."

In the case last cited this court said: "It is also contended by the appellant that the jury have not found a conversion

of the wheat by him; that they have only found facts which operate as evidence of a conversion; that a demand and refusal are evidence of conversion, but not conclusive of the fact of conversion. This is true, and had the jury found nothing more than this, the judgment could not be justified. *Locke* v. *Merchants Nat. Bank* [1879], 66 Ind. 353. But the jury also found that the defendant took possession of the growing wheat, excluded the appellee from it, harvested and threshed it, and refused to deliver any part of it, upon demand, to the appellee. The acts amounted to a conversion of the wheat, and not merely to evidence of a conversion of it.''

In Gillett, Crim. Law §417, it is said: ''A demand is not necessary to establish a conversion, but is only an evidence of it.'' To the same effect see 28 Am. and Eng. Ency. Law (2d ed.) 706, and 15 Cyc. 522.

There must, of course, be a conversion, before the crime of embezzlement can be committed. Where no time is fixed for the delivery of property, a demand is necessary to terminate a lawful possession thereof, but where, as here, the time of delivery, and the person to whom the delivery shall be made, are fixed by the statute, the retention of the property after such time amounts to a conversion thereof, and no demand is necessary. *State* v. *Mason, supra; Hollingsworth* v. *State* (1887), 111 Ind. 289, 12 N. E. 490; *Moore* v. *State, ex rel.* (1876), 55 Ind. 360; *Jones* v. *Jones* (1883), 91 Ind. 378; *Boyd* v. *State, ex rel., supra; Foster* v. *State, ex rel., supra; Shook* v. *State, ex rel.* (1876), 53 Ind. 403; *Voris* v. *State, ex rel.* (1874), 47 Ind. 345; *Hudson* v. *State, ex rel.* (1876), 54 Ind. 378; *Buchanon* v. *State, ex rel.* (1886), 106 Ind. 251, 6 N. E. 614; *Commonwealth* v. *Kelley* (1907), 125 Ky. 245, 101 S. W. 315, 15 Ann. Cas. 573 and note; *State* v. *Reynolds* (1900), 65 N. J. L. 424, 47 Atl. 644; *People* v. *Goodrich* (1904), 142 Cal. 216, 75 Pac. 796; 15 Cyc. 522; Gillett, Crim. Law §414; 2 Bishop, Crim. Law §373.

*Hollingsworth* v. *State, supra,* was a prosecution of a county treasurer, under this act, for failure to pay over to his successor public funds in his hands when his term

11. ended. A previous demand was averred in the indictment, but defendant contended that there was no proof of a demand. The opinion of the court, on this branch of the case, is as follows: "It is insisted still further, that the judgment should be reversed for the reason that there was no evidence that appellant's successor in office made a demand upon him for the funds. Such a demand was not necessary in order to establish a conversion and embezzlement of the funds. *State* v. *Mason* [1886], 108 Ind. 48 [8 N. E. 716]; *Commonwealth* v. *Tuckerman* [1857], 10 Gray 173; *Commonwealth* v. *Hussey* [1873], 111 Mass. 432."

In their oral argument, counsel for appellee, in support of their construction of §2284, *supra,* called the attention of the court to §2283 Burns 1908, Acts 1905 p. 584. This latter section was first enacted in 1855 (Acts 1855 p. 89). As amended and reënacted in 1881 (Acts 1881 [s. s.] p. 174, §42, §1943 R. S. 1881) it applied to various officers, including county treasurers, and provided that any such officer, "who shall fradulently fail or refuse, *at the expiration of the term for which he was elected or appointed,* or at any time during such term, when legally required by the proper person or authority, to account for, deliver, and pay over to such person or persons as may be lawfully entitled to receive the same, all moneys * * * which may have come into his hands by virtue of his said office, shall be deemed guilty of embezzlement," etc. The penalty fixed was imprisonment, fine and incapacity to hold office for any determinate period.

The act of 1883 (Acts 1883 p. 106, §2021 Burns 1901) fixed the same penalty, except that it omitted the incapacity to hold office.

In the reënactment of this act of 1855 as §390 of the act

of 1905 (Acts 1905 p. 584, §2283 Burns 1908) the clause, "at the expiration of the term for which he was elected or appointed," was eliminated, and the act now applies to fraudulent failures and refusals which occur "at any time during such term."

It may be that when the act of 1883, *supra,* was passed, §1943, *supra,* was broad enough to cover the failure or refusal of the officer, when called on to do so, to pay to the persons entitled thereto funds received from a predecessor, and if so, that it is improbable that the legislature of 1883 sought merely to make the slight change in penalty that was made.

It is probable that the legislature of 1883 regarded it doubtful whether the act of 1855, *supra,* would embrace the conversion of funds received from a predecessor, and that the legislature of 1905 followed that construction.

If not, the act of 1883, *supra,* being the later, would control in case of conflict; and even if §§2283, 2284, *supra,* had been for the first time enacted in 1905, the latter, by reason of its position in the act, would control, in case of irreconcilable conflict.

12.

In any event, such question is in noway involved here. As before stated in this opinion, this court in *State* v. *Wells, supra,* declared that the act of 1883, *supra,* defined two offenses, and only the first one of these is in question here. The changes in §§2283, 2284, *supra,* made by the legislature of 1905, were evidently for the purpose of making the two sections harmonize with each other and with the construction given by this court in the case of *State* v. *Wells, supra.*

The Hollingsworth case was decided in 1887, and was never overruled, and the construction given the act, in reference to proof of demand, was adopted by the substantial reënactment of the statute.

Counsel for appellee say in their brief that because the indictment in that case alleged a demand, the question of the averment could not have arisen. This is true, but if there

was no necessity for proof of a demand we fail to see any reason for the need of such averment, and no sufficient reason has been suggested by counsel. Our statute (§2063 Burns 1908, Acts 1905 p. 584) provides that no indictment shall be quashed for any defect which does not tend to the prejudice of the substantial rights of the defendant on the merits. If this indictment could be held defective for its failure to aver a demand, when no proof whatever of such demand is required by the law, such defect would be wholly unsubstantial, and, under the statute, could not furnish a basis for a motion to quash.

This indictment follows the form given in Gillett, Criminal Law §420. This work has been recognized by this court and by the profession as a most valuable treatise on its subject. The author's conclusion, that no demand is necessary in a prosecution for this offense, is thoroughly supported, not only by our own decisions, but by those of other states, and by textbook authorities. 10 Am. and Eng. Ency. Law (2d ed.) 995; *Commonwealth* v. *Hussey, supra; State* v. *New* (1875), 22 Minn. 76; Moore & Elliott, Ind. Crim. Law §§378, 968; 15 Cyc. 522; *Commonwealth* v. *Kelly* (1907), 125 Ky. 245, 101 S. W. 315, 15 Ann. Cas. 573 and note on pp. 575, 576; 2 Bishop, Crim. Law §373; *Cox* v. *Delmas* (1893), 99 Cal. 104, 33 Pac. 836; *State* v. *Hunnicut* (1879), 34 Ark. 562; 38 Cyc. 2031.

11. The Criminal Court of Marion County erred in quashing the indictment for the failure to aver a demand.

Is the ownership of the money, averred in the indictment to have been embezzled, sufficiently alleged therein? It is essential, in charging this offense, to aver the felonious conversion of the property of another. The averment must negative any ownership in the person charged with the embezzlement. The indictment charges that said sum of money had come into the hands of said Oliver P. Ensley as such treasurer, by

virtue of his said office of treasurer," and that this money he, "at the time of the expiration of his term of office, then and there had in his hands as such treasurer of said county."

It is suggested by counsel for appellee, that this court will, among other things, take judicial notice that a county treasurer is entitled to certain commissions for the collection of delinquent taxes; that such commissions are received by the treasurer, by virtue of his office, and that the money here charged to have been embezzled might consist of such commissions, the retention of which would, of course, not be embezzlement.

The indictment here, however, goes farther, and alleges that this sum of money, the defendant, at the expiration of his term of office, "had in his hands as such treasurer." It could not possibly be held that money belonging to the treasurer, whether received in his official capacity or otherwise, was, at the expiration of his term of office, in his hands as the treasurer of the county. We think the language of the indictment excludes the theory that defendant might have been the owner of the money.

It is not necessary to describe specifically the funds and name the several owners thereof, such as county funds, township funds, etc. In his official capacity, a county treasurer collects taxes which are eventually divided and paid to the State, the county, the townships and the various other municipalities and institutions. To specify such funds, and the names of the owners thereof, would be, if not practically impossible, wholly unnecessary. *Hollingsworth* v. *State, supra; State* v. *Hebel* (1880), 72 Ind. 361; *Armstrong* v. *State* (1896), 145 Ind. 609, 43 N. E. 866; *State* v. *Wells, supra;* Gillett, Crim. Law §420; *Brown* v. *State* (1869), 18 Ohio St. 496; *Brady* v. *Arizona* (1900), 7 Ariz. 12, 60 Pac. 698; *People* v. *McKinney* (1862), 10 Mich. 53; *State* v. *Smith* (1874), 13 Kan. 274; *State* v. *Walton* (1873), 62 Me. 106.

In the case of *Hollingsworth* v. *State, supra,* this court

held as follows on page 294: "It is further insisted that the funds charged to have been embezzled should have been particularly specified, whether county funds, school funds, etc., and that the indictment is bad for want of such particular description. The act of 1883 (Acts 1883 p. 106) provides that it shall be the duty of the treasurer of each of the several counties receiving money in his official capacity, at the expiration of his term of office, to pay over to his successor in office all moneys of every description, to whomsoever due, remaining in his hands at the expiration of such term, and that any treasurer so failing to pay over such moneys shall be deemed guilty of embezzlement. The contention of counsel is fully met and overthrown by the cases of *People* v. *McKinney* [1862], 10 Mich. 53, *State* v. *Smith* [1874], 13 Kan. 274, and *State* v. *Graham* [1874], 13 Kan. 299."

That case was decided in 1887. The construction then given by this court, was adopted by the legislature in the reënactment. The averments of ownership were no more specific in the Hollingsworth case than in this. In fact they appear to have been the same, and consequently the authority of that case is binding.

No greater certainty is required in criminal, than in civil, pleadings. Both must be certain to a common intent. *McCool* v. *State* (1864), 23 Ind. 127; Gillett, Crim. Law 15. §125. The law does not require technical niceties in the averments of an indictment. The charge should be sufficiently certain, that the court and the jury may know what they are to try, and to inform the defendant of the character of the proof which would be brought against him, and to bar another prosecution for the same offense. Greater particularity is not required. Gillett, Crim. Law 14. §125; *United States* v. *Greene* (1906), 146 Fed. 778. The averments of ownership are sufficient. 15 Cyc. 516.

Appellee further maintains that to construe the statute

under consideration as authorizing the imprisonment of an officer for the mere failure to pay over money to his successor at the expiration of his term would bring it in conflict with §22 of our bill of rights (Const. Art. 1, §22), which prohibits imprisonment for debt, except in case of fraud.

The statute does not expressly require that the official failure denounced shall be unlawful, fraudulent or felonious. In *Stropes* v. *State* (1889), 120 Ind. 562, 22 N. E. 773, a county treasurer was indicted for embezzlement under this statute. The indictment failed to allege that the acts therein charged were done either unlawfully, fraudulently or feloniously. In holding the indictment insufficient, the court, among other things, said: "But if the funds which came into his hands were destroyed by the act of God, or if the safe in which he should place them should be robbed and the money stolen without his fault, or if he should deposit the same in a bank of good repute for solvency and they should be lost without his fault, or if in the disbursement of the funds he should make an honest mistake and pay out more than he should have paid, we do not think he would be liable to a criminal prosecution under this statute; and yet by the term of the statute he would be liable. It is evident, therefore, that this statute is not to be construed in as broad a sense as its language would imply, and an indictment simply following its language is bad. We think that the indictment should have charged that the failure of the appellant to pay over to his successor in office the moneys remaining in his hands was felonious."

In many other cases, in addition to the ones stated in the above quotation, no doubt the accused would be guiltless of a violation of the act. And, under this decision, the officer can in no case be punished, unless the failure to pay to his successor was in truth felonious.

*Stropes* v. *State, supra,* was decided in 1889. The substantial reënactment of the statute in 1905 (Acts 1905 p.

584, §2284 Burns 1908) adopted the construction thereof given it by this court. Consequently the statute must now be construed, just as it would be if the failure therein denounced were expressly characterized as felonious and fraudulent. So construed, the statute does not conflict with the above provision of our Constitution.

It is finally contended by appellee that the section of the act under which this indictment was returned was repealed by implication by the depository act of 1907 (Acts 1907 p. 391, §§7522-7546 Burns 1908). The State claims the act was not in effect as to defendant during his term, but, if it was, it did not repeal the act in question. This court does not judicially know whether the Marion county board of finance had before January 1, 1908, selected depositories for county funds, authorized to receive deposits, under the provisions of the act, and consequently it is necessary to consider the point raised by appellee's counsel.

Repeals by implication are not favored. It is only when the new statute covers the whole subject-matter of the old one, adds new offenses, and prescribes different penalties, that such former criminal statute is held repealed by implication. *State* v. *Wells, supra,* and cases cited.

The depository act does not cover the whole subject-matter of §391 of the act of 1905 (Acts 1905 p. 584, §2284 Burns 1908). It does not require officers to deposit funds, collected by them, on the day they are received, but on the following day (Acts 1907 p. 391 §24, §7545 Burns 1908). It was not defendant's duty to deposit any of his collections made on the last day of his term, in the public depositories. It was, as to such funds at least, his duty to turn them over to his successor, as provided in §391 of the act of 1905, *supra.* This latter statute was not repealed by the depository act of 1907, *supra.*

In our opinion, the indictment in this case is sufficient to

repel the motion to quash, and the court erred in sustaining appellee's motion.

Judgment reversed, with instructions to overrule the motion to quash.

Jordan and Myers, JJ., dissent.

## DISSENTING OPINION.

MYERS, J.—I am not able to concur in the majority opinion in this case as to the proposition that a demand is not necessary to be alleged under §2284 Burns 1908, Acts 1905 p. 584, §391, the section on which the indictment is based. Section 2283 Burns 1908, Acts 1905 p. 584, provides a penalty for the failure of a public officer at any time during the term for which he was elected or appointed, "when legally required by the proper person," etc., to pay over money, or deliver property, etc., which may have come into his hands by virtue of his office. The penalty is a fine not exceeding $1,000, imprisonment for not less than one, nor more than five years, and disqualification from holding any office of trust or profit for any determinate period. Section 2284, *supra,* as I read it, applies to one going out of office and to his successor as well, while §2283, *supra,* applies to funds arising from collections during a term in the usual course of business. Section 2284, *supra,* prescribes a different penalty from §2283, *supra,* in that it leaves off the disqualification from holding office. The first portion of §2284, *supra,* does no more than declare a common-law duty and obligation, both as to the officer and the successor. The purpose of §2284, *supra,* was the protection, under criminal penalties, of particular characters of moneys as such, and is directed to the subject of moneys coming to an officer in a particular way, and against the officer for the time being who is the custodian. If this be not true, then §2283, *supra,* and the latter portion of §2284, *supra,* cover the same subject and ground, but with different penalties, and we must assume that there was some purpose in this statute, for

§2283 formerly applied not only to officers during the term, but at the expiration of the term.

Acts 1855 p. 89, was amended in 1881 (Acts 1881 [s. s.] p. 174, §1943 R. S. 1881).

Section 2284 had its origin in 1883 (Acts 1883 p. 106), under an act entitled ''An Act relating to county, State, and other officers, and the payment by them to their successors in office of all moneys in their hands at the expiration of their terms of office, and providing penalties for failing so to do.''

The act was as follows: ''That it shall be the duty of each clerk, sheriff, and treasurer of the several counties in this State, and every other officer receiving money in his official capacity, at the expiration of his term of office, to pay over to his successor in office all moneys of every description, to whomsoever due, remaining in his hands at the expiration of such term, taking the receipt of such successor therefor; and such successor and his sureties shall be liable therefor on his official bond, as if the same had been originally collected by him; and any clerk, treasurer, or sheriff, so failing to pay over such moneys, *or* any successor, *or* clerk, treasurer, *or* sheriff who shall fail to pay over *any* moneys to parties entitled to receive the same when called on to do so, shall be deemed guilty of embezzlement, and, on conviction thereof, shall be fined in any sum not exceeding one thousand dollars, and be imprisoned at hard labor in the State prison not less than one nor more than five years.''

The reason for the enactment of the statute is pointed out in *State* v. *Wells* (1887), 112 Ind. 237, 240, 13 N. E. 722. When the act was adopted in 1905 with the construction theretofore put upon it by the courts, in which demand had invariably been alleged, it was modified in such manner as to indicate more clearly the purpose as declared in the title of the original act. For the purpose of comparison the act of 1905, *supra,* is set out. ''It shall be the duty of each clerk of the circuit court, sheriff and treasurer of each

county in this state, and of every other county, state, township, city or town officer in this state receiving money in his official capacity, at the expiration of his term of office, to pay over to his successor in office all moneys of every description, to whomsoever due, remaining in his hands at the expiration of such term, taking the receipt of such successor therefor; and such successor and his sureties shall be liable therefor on his official bond, as if the same had been originally collected by him; and any clerk, treasurer, sheriff or other such county, state, township, city or town officer, so failing to so pay over such moneys, *and* any such successor *to any* clerk, treasurer, sheriff or other such officer who shall fail to pay over any *such moneys* to parties entitled to receive the same, when called on to do so, shall be deemed guilty of embezzlement, and, on conviction, shall be fined in any sum not exceeding one thousand dollars, and be imprisoned in the state prison not less than one year, nor more than five years.''

The words italicised mark the changes. The word ''such'' in the phrase ''failing to pay over such moneys'' and in the phrase ''who shall fail to pay over any such moneys,'' clearly refers to moneys in the hands of an outgoing officer, payable to, and *also* those received by a successor in office, for it will be seen that the words ''such moneys'' in the first clause can by no construction be limited or applied to successors in office, for immediately following it ''successors'' are specifically designated, to my mind clearly indicating that the phrase when ''called on to do so'' refers not only to the outgoing officer, but also to his successor at the expiration of, or *during* his term of office, *as to moneys received in succession,* and the change in the act of 1905 by the addition of ''such'' indicates the intent. There could be no other reason for the section. The disjunctive ''or'' in the act of 1883, after the words ''such moneys,'' and before the words ''any such successor,'' and the substitution of ''and'' leads further to the intention to couple both characters of officers in the same

category, and as subject to the same penalties under the same conditions; that is, "such" moneys refers to such moneys as are received by a successor from another predecessor in office, which he in turn must account for and pay over to his successor if he still has them, but which he may be indicted under the latter part of §2284, *supra,* for failing to pay out on proper demand, *during* his term, and indicates the legislative intention to reach a possible case which would not be reached by §2283, *supra,* or the first part of §2284, *supra,* and the whole subject of §2284, *supra,* is that of successors in office. This construction harmonizes and gives full force to both sections. That is, §2283, *supra,* applies to such demands for payments as may rightfully be made on the officer during his term of office, as to collections made by him, and §2284, *supra,* applies to an officer or his successor at the expiration of or during their terms, as to moneys received in succession. I gather this from the fact that §2283, *supra,* leaves out the provision of former sections which applied to the expiration of a term as well as to payment during the term, and the requirement for demand was the same as to each, under that section, though the general statute from 1853 (§9489 Burns 1908, §5925 R. S. 1881), has required county treasurers at the expiration of their terms to deliver to their successors all public money, books and papers, and §2284, *supra,* is explicit in its reference, by the use of the word "such" in referring the subject of that section, to moneys which, at the expiration of a term of office, should be paid to a successor, and by the latter in turn paid out. In other words, there was no occasion for any reference in §2284, *supra,* to the payment of moneys by a successor in office received by him in the transaction of current business, as that subject is covered by §2283, *supra,* and the object of §2284, *supra,* seems to have been an excess of caution on the part of the legislature to provide against the contingency of one who obtains money as a successor in office refusing to pay to the proper person during his term,

or on going out of office, without any penalty being provided for his nonpayment of moneys he may have received from his predecessor. Any other construction would lead to the result that under said §2283 the failure of one who is a successor in office, to pay over the moneys in his hands collected in the course of the current business, would subject that officer to a fine, imprisonment, and incapability of holding office, while for failure to pay out money which he had received from his predecessor, he would be free from incapability to hold office; a distinction without reason.

It is conceded by the State, as to payments during the term of office of the original collecting officer, demand is required because the statute so provides. It is argued that this is so, because it is only because of a proper demand made on him that he can be called on or required to pay, but that at the expiration of a term, the duty arises and is fixed by law to pay over, and that the law implies, or raises a demand, from that fact. The duty arises in one case as much as in the other, so far as the abstract provision of the statute as to payment is concerned. Doubtless the legislature might provide that a prosecution for embezzlement will lie without a demand alleged, or that the action will lie without proof of a demand, under proof of fraudulent failure, or refusal to account for and pay over money, but that would be a question arising on the evidence under which a fraudulent failure, or fraudulent failure to account and pay, shown, would in and of itself obviate a demand, and this I understand to be the effect of the cases upon which the State relies, but I find no case in which it is held that a demand under §§2283, 2284, *supra,* need not be alleged as a matter of pleading. The case of *State* v. *Mason* (1886), 108 Ind. 48, 8 N. E. 716, did not present the question as a matter of pleading, for the indictment alleged a demand. The same is true as to *Hollingsworth* v. *State* (1887), 111 Ind. 289, 12 N. E. 490, *State* v. *Wells, supra,* and *Stropes* v. *State* (1889), 120 Ind. 562, 22 N. E. 773.

In *State* v. *Hebel* (1880), 72 Ind. 361, a prosecution under §2283, *supra,* before its amendment, it was held that there must be a demand, though at that time the general statute was in force as to the duty of a county treasurer at the expiration of his term of office to pay over to his successor moneys, etc., in his hands, but it was, by virtue of the express provision of the statute, required that a demand be alleged, but on the State's theory, that would at no time have been necessary, owing to the general statute fixing a definite time when he shall pay over to his successor, and that general statute is here relied on by the State as fixing a definite time when embezzlement is charged to have occurred, from the mere failure to pay at that time, without necessity for a demand alleged.

In *State* v. *Record* (1877), 56 Ind. 107, it was held that in an indictment against a public officer for failure to pay over money required to be paid at stated times, such facts must be stated as will clearly show a violation of his duty, and that it is not sufficient to charge that he has committed a specified crime by alleging the act as ''unlawful,'' but facts must be alleged showing how he committed the alleged crime, by reciting the facts constituting the offense within the legislative intent. See, also, *Stropes* v. *State, supra.*

It should be noted that under §2282 Burns 1908, Acts 1905 p. 584, §389, conversion by defined acts constitutes the crime, without demand. *Dean* v. *State* (1897), 147 Ind. 215, 46 N. E. 528.

With §§2283, 2284, *supra,* as throwing light on the question, should be read §2130 Burns 1908, Acts 1905 p. 584, §254, which imports the requirement for a demand, while §§2291, 2292 Burns 1908, Acts 1905 p. 584, §§398, 399, are akin to said §2282 in making the conversion itself a crime without demand.

It is well established that it is sufficient to charge an offense in the language of the statute when the statute defining an offense specifies what acts shall constitute an of-

fense, but if the offense is not specifically defined by the statute then the particular acts constituting the offense must be alleged. *State* v. *New* (1905), 165 Ind. 571, 76 N. E. 400; *Johns* v. *State* (1902), 159 Ind. 413, 65 N. E. 287, 59 L. R. A. 789; *State* v. *Patton* (1902), 159 Ind. 248, 64 N. E. 850; *State* v. *Feagans* (1897), 148 Ind. 621, 48 N. E. 225; *Littell* v. *State* (1893), 133 Ind. 577, 33 N. E. 417.

The offense provided for in §2284, *supra*, is a failure to pay over money, and it is conceded in the prevailing opinion that it must be a fraudulent or felonious failure, hence it would not be sufficient merely to charge in the language of the statute a failure to pay over, but the prevailing opinion travels on the theory that it is being charged that appellee did "unlawfully, feloniously and fraudulently fail, neglect and refuse" to pay, is sufficient to constitute the offense. The term "refuse" to pay might imply a demand, but the offense cannot be charged by implication. Were it not for the peculiar language of §2284, *supra*, taken with §§2130, 2282, 2283, *supra*, I should be constrained to hold that an offense is charged, because the charge of feloniously failing would probably imply criminal intent, and yet we have seen that to charge the failure as "unlawful" is not sufficient, but the statute has, as I conceive it, provided what must be done to raise the question of fraudulent or felonious intent, as a matter of pleading. The evidence might be such in a given case as to raise the question of felonious intent, without a formal demand shown, but under the statute as a matter of pleading it cannot, in my opinion, be raised without an allegation of a demand. If, as claimed by the State, the time fixed by law for paying over to a successor makes a demand, the words "when called on to do so" are meaningless, and we must regard them as being advisedly and purposely used. Why inject words into the statute which are not there, and reject or give no force to words which are there, when, under the views herein expressed, neither course is necessary, for the offense is ripe for punishment by so sim-

ple a thing as a demand, and the court has always regarded it as necessary in pleading?

Civil cases where it is held that no demand is necessary when the contract or law fixes a definite time of payment, manifestly are not in point on the question before us, for the reason that the suit makes the demand.

Recurring to the statute, it seems to me that §2284, *supra,* describes but one offense, as applying alike to a public officer failing to pay over to his successor, and the failure of the latter, in turn, to pay to his successor, or to those entitled to the particular fund so received, and that in either case, the phrase "when called on to do so" refers to both classes, and that it is a statutory requirement under this section, as a matter of pleading, that demand must be alleged, unless it be alleged to be impossible from his absconding, or other excuse rendering it impossible. *Dean* v. *State, supra; Kossakowski* v. *People* (1899), 177 Ill. 563, 53 N. E. 115; *State* v. *Blackley* (1905), 138 N. C. 620, 50 S. E. 310; *State* v. *Knowles* (1904), 185 Mo. 141, 83 S. W. 1083; *State* v. *Pellerin* (1907), 118 La. Ann. 547, 43 South. 159; *State* v. *Foley* (1890), 81 Iowa 36, 46 N. W. 946; *United States* v. *Adams* (1880), 2 Dak. 305, 9 N. W. 718; Underhill, Crim. Ev. (2d ed.) §284.

If it be said that under this construction it permits the incoming officer to determine when an offense has been committed, depending on the question whether a demand is made or not, the answer is that the books and the settlement sheets show the situation, and that the incoming officer will be presumed to do his duty, and do what the statute requires, and for failing to do so he is liable to removal for malfeasance, misfeasance or nonfeasance in office. §9662 Burns 1908, Acts 1897 p. 278, §35.

At common law he was indictable.

The distinction between statutes which give rise to statutory crime from the statutory declaration that a given state of facts shall constitute a crime, as embezzlement from con-

version, and those in which something else must intervene to lay the foundation for a prosecution, as a demand, is well illustrated in the following cases. The distinction drawn by the writer is identically made in *State v. Munch* (1875), 22 Minn. 67, a well-considered case, and directly in point upon the question of constructive conversion, from failure to pay over at the expiration of a term. To the same point are *State v. Longley* (1858), 10 Ind. 482; *State v. McKinney* (1906), 130 Iowa 370, 106 N. W. 931; *Haines v. People* (1880), 97 Ill. 161; *Wright v. People* (1871), 61 Ill. 382; *State v. Hayes* (1898), 59 Kan. 61, 51 Pac. 905; *State v. Bancroft* (1879), 22 Kan. 170; *State v. Pierce* (1898), 7 Kan. App. 418, 53 Pac. 278.

The cases relied on in the prevailing opinion were all passed on prior to the enactment of 1905, and prior to the publication of the excellent treatise of Judge Gillett, and the changes in the act of 1905 were doubtless due to the holdings in those cases. As I have shown, *State v. Mason, supra,* based on the Massachusetts case, overlooks the important fact that the latter was a case of conversion in fact, not technical conversion, and in the Mason case actual conversion was charged. In *Hollingsworth v. State, supra,* a demand was alleged, and while there was no technical demand shown, the court adverts to the fact that it is shown by the evidence that he was clearly guilty and that he admitted the conversion of the funds, so that actual conversion was shown. When we come to *State v. Adamson* (1888), 114 Ind. 216, 16 N. E. 181, Zollars, J., who had written the opinion in *Hollingsworth v. State, supra,* held the indictment invalid for lack of an allegation of demand, and as I understand *Hays v. O'Brien* (1909), 56 Wash. 67, 105 Pac. 162, it is on the same line, for the indictment directly charges conversion. So that on careful analysis, it seems to me that the writer's views are in direct consonance with the cases, and the distinction he seeks to point out, viz: that in case of actual conversion, or a charge of actual conversion, it may be that a

demand need not be alleged or shown, for the reason that conversion itself creates the offense, but in the absence of actual conversion, constructive conversion, or embezzlement, can only arise from a demand.

It is said that demand is only evidence of conversion, and if so, then when conversion is alleged, the thing itself is alleged, and not the evidence of it, and it is that fact, circumstance and condition in all the cases which obviates the necessity for demand, as an unnecessary thing, where conversion is alleged. A fact is certainly as potent as the evidence of it, and this is the key to the decisions, and also the reason for the language of the statute, which is in exact consonance with the decisions.

Under the prevailing opinion, the statute is the subject of malicious oppression, while under my views it is intended that there shall be a demand unless conversion is charged under §2282, *supra,* or demand being impossible, and a reason alleged. *State* v. *Munch, supra,* is directly in point, also *State* v. *Hunnicut* (1879), 34 Ark. 562. *Commonwealth* v. *Tuckerman* (1857), 10 Gray 173, is shown by the opinion to have been a charge of conversion, and *State* v. *Mason* (1886), 108 Ind. 48, 8 N. E. 716, founded on it, charged conversion to the defendant's own use, and the citation of *Gordon* v. *Stockdale* (1883), 89 Ind. 240, is further evidence of the application of the rule to conversion, and not to cases where other facts are necessary to constitute embezzlement, for in that case forcible possession of the property is alleged. The same is true as to *People* v. *Dalton* (1836), 15 Wend. 581; *Commonwealth* v. *Hussey* (1873), 111 Mass. 432; *State* v. *Tompkins* (1880), 32 La. Ann. 620; *State* v. *Leonard* (1869), 46 Tenn. 307; *People* v. *Tomlinson* (1885), 66 Cal. 344, 5 Pac. 509; *State* v. *Belden* (1883), 35 La. Ann. 823; *State* v. *Cameron* (1871), 59 Tenn. 78.

An examination of these cases will disclose the distinction between embezzlement by conversion, under §2282, *supra,*

and embezzlement under §§2283, 2284, *supra*, as to the question of the allegation of demand, and the legislature has seen fit to distinguish the offense with different grades of punishment as to each. It is conceded in the prevailing opinion that there must be read into §2284, *supra*, the charge of fraudulently or feloniously failing, etc. (*Stropes* v. *State*, *supra*); but if the mere omission or failure to pay over creates the offense, then the motive would be immaterial so far as the charge is concerned, and it would be unnecessary to charge that the failure is felonious or fraudulent, to supply the intent, and that explains the omission from §2284, *supra*, of any such language. In other words, the statute is intended to create the offense under §2284, *supra*, for failure to pay over on demand, thus creating a condition from which embezzlement may be charged, for it will be seen that §2283, *supra*, supplies the intent from the language "fraudulently fail," while still requiring demand, and §2282, *supra*, supplies it from conversion, and §2284, *supra*, from failure on demand, and this is in exact accord with *State* v. *Cameron*, *supra*, where the specific language of the statute was "wilfully" failing or refusing, following *State* v. *Leonard*, *supra*. The legislature had an express purpose where the embezzlement is not by conversion, or under §2283, *supra*, but from failing to pay over under §2284, *supra*, to require demand, unless the inability to make it is accounted for, in order to present a technical offense from the mere failure to pay at once. Any acts which would excuse a demand might be shown, and in cases of conversion the reason for no demand being alleged is apparent from the charge itself, while we here have a statute creating a technical offense, which it seems to me the legislature sought to give all necessary force for the protection of the public, and still hedge it against abuse. It is no answer to say that if there is an excuse so as to escape technical guilt it is a matter of defense; that would be true under either construction of the section, but the answer is that the statute created no exception, and is

squarely within the rule in *Britton* v. *State* (1884), 77 Ala. 202, where the language of the statute was, "who shall fail to make returns and forward the tax money in his hands from time to time to the proper authorities as provided by law, *except for good cause*," and it was held under the general rule as to exceptions in a statute, that they are matters of defense. *State* v. *Barrett* (1909), 172 Ind. 169, 87 N. E. 7.

But this section has no proviso, or exception, and one should not be interpolated, nor should a citizen be called on to expend money, or his character be defamed by a charge in such form that he must prove a negative or an excuse, unless the statute so provides, nor except upon a charge of a statutory offense, and certainly not where it is doubtful, to say the least.

I think the indictment is insufficient, and the judgment should be affirmed.

NOTE.—Reported in 97 N. E. 113. See, also, under (1) 36 Cyc. 1106, 1110, 1145, 1146; (2) 36 Cyc. 1152; (3) 36 Cyc. 1154; (4) 15 Cyc. 486; (5) 36 Cyc. 1153; (6) 36 Cyc. 1107; (7) 15 Cyc. 495, 496; (8) 15 Cyc. 496; 15 Ann. Cas. 575; (9) 38 Cyc. 2031; (10) 38 Cyc. 2032; (11) 15 Cyc. 522; (12) 36 Cyc. 1130; (13) 15 Cyc. 517, 521; (14) 15 Cyc. 517; (15) 22 Cyc. 295; (16) 8 Cyc. 802; 36 Cyc. 974; (17) 36 Cyc. 1095; 88 Am. St. 271; 14 Am. Dec. 209.