## Jesse Davenport v. Aaron Parsons Jr.

To make a valid deed under a power of attorney, it is essential that there should be an intention on the part of the attorney to execute the deed under and by virtue of the power; or at least that the contrary intention should not appear.

Where a deed purported to be made by attorneys under a power from the two grantors, and there was some testimony that a joint power had existed, but it was not given in evidence, and only a separate power from one of the grantors was proved, it was *held* that the execution of the deed could not be referred to this separate power, and the deed sustained as the deed of the grantor who had executed such separate power.

*Heard November 6th and 7th,* 1861. *Decided April 22d.*

Error to Lapeer Circuit.

Action of ejectment by Parsons against Davenport. On the trial, plaintiff traced title to the premises in controversy to Thomas Emerson, Frederick Pettis and Richard H. Morris, by deed dated Jauuary 30, 1837, and which granted them "to the said party of the second part and to the survivors or survivor of them (not as tenants in common, but as joint tenants, with right of survivorship), his heirs and assigns forever;" *habendun* "to the said party of the second part, and to the survivors or survivor of them, and to his heirs and assigns forever." A written stipulation of the parties was then given in evidence, admitting that the grantees named in said deed died, said Morris in November, 1837, said Pettis in November, 1838, and said Emerson in February, 1853; that Emerson left three heirs at law, who in July, 1857, gave a deed of the premises to Lewis R. Morris, and "that said defendant is in possession of said premises, and that the signatures to a certain paper purporting to be a power of attorney from Thomas Emerson, Richard H. Morris and Frederick Pettis, to Curtis Emerson and Royal H. Waller are genuine." Plaintiff then put in evidence the record of a deed of the premises from Lewis R. Morris to himself, and rested.

The defendant then called as a witness Curtis Emerson, who testified to the existence of a power of attorney from

Thomas Emerson and Lucy his wife, to the witness and Royal H. Waller, dated in the summer of 1837, and its loss; that when this power of attorney was in his possession, he had also in his hands another power of attorney executed by said Thomas Emerson, Frederick Pettis and Richard H. Morris, constituting witness and said Royal H. Waller as their attorneys, and that he believed a paper produced and shown to him upon the stand, was substantially a copy of the first mentioned power of attorney. This copy was then given in evidence. It bore date June 13, 1837, and empowered the attorneys named, among other things "to sell and dispose of absolutely, in fee simple or otherwise," "all and singular the premises in any manner belonging unto the said Thomas Emerson, whether in severalty, in common, or in any other way or manner" within the State of Michigan, "and to sign, seal and deliver such deeds and conveyances as said attorneys shall unitedly think fit and expedient."

The above was all the testimony given on the trial relating to the authority of Curtis Emerson and Royal H. Waller to act as attorneys for said Thomas Emerson and Frederick Pettis or either of them.

The defendant then offered to read in evidence from the records of deeds of Lapeer county what purported to be the record of a deed of the premises in controversy, as follows:

"This indenture, made the 27th day of December, A. D. 1837, between Thomas Emerson and Frederick Pettis, of Windsor, in the county of Windsor, and State of Vermont, of the first part, and Frederick Pettis, of Windsor aforesaid of the second part, witnesseth:" [The deed is then in the common form of warranty deeds to the attestation clause, which is as follows]: "In witness whereof the said Thomas Emerson and Frederick Pettis, have hereunto set their hands and seals the day and year first above written.

THOMAS EMERSON, [SEAL.]
FREDERICK PETTIS, [SEAL.]

*By their Attorneys who sign in virtue of a power of Attorney.*

Signed, sealed and delivered, } 　　R. H. WALLER,
　　in presence of 　　　　 } 　　CURTIS EMERSON."
　　　　　　GEO. G. BULL,
　　　　　　SILAS B. WALLER."

The following certificate of acknowledgment was attached:

STATE OF MICHIGAN, } ss.
COUNTY OF WAYNE, }

On the twenty-eighth day of December, one thousand eight hundred and thirty-seven, before me a Notary Public for said county, personally came the above named R. H. Waller and Curtis Emerson, known to me to be the persons who executed the foregoing instrument, and acknowledged the same to be their free act and deed.

　　　　　　　　GEO. G. BULL,
　　　　*Notary Public, Wayne County, Michigan."*

To the introduction of this record as evidence the plaintiff objected:

1st. Because there did not appear or purport by the record thereof to be any acknowledgment of said deed, by the grantors or otherwise, sufficient to entitle it to record.

2d. Because the power of attorney, as proved, did not authorize the making or acknowledging of such deed by said attorneys, and consequently no title of the grantors named therein could be established thereby.

3d. Because it was manifest from the terms of the deed, that the same was not made under the power of attorney given in evidence, but purported to be made under a joint power given by said Thomas Emerson and said Pettis, and no testimony was given to establish such joint power.

4th. Because such deed, if executed in the manner and form appearing by said record, conveyed no title, the grantee therein named being one of the grantors.

Which objection was sustained, and the record excluded; and the plaintiff had judgment.

*C. I. Walker*, for plaintiff in error:

1. It is unquestionably true as a general rule that a deed, executed by an attorney, must be executed in the name of the principal, and this for obvious though technical reasons. It is the principal whose property is to be conveyed, or who is to be bound by the act; and it must appear upon the face of the papers, that it *is his act by the attorney*, and his seal; and not the act and seal of the attorney: — 10 *Wend.* 88; 4 *Hill*, 351; 2 *Cush.* 337; 12 *S. & M.* 542. But this rule is to receive a liberal construction, so as, if possible, to sustain the deed: — 7 *N. H.* 475; 10 *Ibid.* 490; 5 *Gratt.* 119; 8 *Ibid.* 241; 2 *McMullen*, 407; 21 *Ala.* 72. And in case of public agents they may convey in their own names: — 5 *N. H.* 510; 18 *Mo.* 227. The acknowledgment rests upon no such principles. It is no part of the deed, but a mode provided by the statute for its authentication to entitle it to record, so as to make it constructive notice.

By the statute, a deed was to be acknowledged by the grantor, or proved, &c., "as hereinafter provided:"— *Laws of* 1833, *p.* 280 § 1. It is afterwards provided that a deed shall be acknowledged by the party *executing the same:* — *Ibid.* § 2. When a deed is made by an attorney, it is the deed of the principal, executed in his name, but *by* the attorney. The principal executes the *power*. *That is his* free act and deed, but the *deed* is the act of the attorney under the power. It is by his free will that this is executed, and his mind and his alone acts at the time of the acknowledgment. The acknowledgment of this act is, and *must be*, that of the attorney, and may be done in his own name. See *Curtis' Conveyancer, No.* 3; 6 *Paige*, 60; 3 *Barb.* 208, 240; 22 *Vt.* 274, 286; 11 *Ala.* 977; 1 *H. & McH.* 146; 1 *Humph.* 54; 3 *Ind.* 203, 207.

In some of these cases the description of their representative character is appended to the name of the attorneys in the acknowledgment, but this does not affect the question

in the least: for 1st. Just such a description appended to the deed after the signature of the attorneys would not make it the deed of the principal,—as the authorities already cited fully show,—nor could it make the acknowledgment any thing but that of the attorney. 2d. The only thing which this description tends to show is, that the deed was executed by the attorneys as attorneys for their principal: this is as clearly shown by a reference to the deed itself, and this reference may be made, if necessary, in order to help out the acknowledgment:—22 *Vt.* 274; *Ibid.* 407; 11 *Ala.* 979; 20 *Ill.* 397, 402; 13 *B. Monr.* 535; 10 *Iowa*, 358.

2. The second objection is that the power proved did not authorize the making or acknowledgment of such a deed.

The power is very broad in its terms, and fully authorizes the conveyance of any lands owned by Thomas Emerson, whether owned "in severalty, in common, undivided, or in any other way or manner. Upon what principle can it be contended, that the attempted conveyance from Pettis to Pettis made void so much of the deed as purports to convey Emerson's interest in the premises to Pettis? This the power fully authorized. This the attorneys fully intended.

The parties owned the land in joint tenancy, and the object of the conveyance, the clear intent of the parties, was to convey the entire interest to Pettis. This intent was legal, and the Court should so construe the deed as, if possible, to make it effective and carry out the intention of parties:—4 *Cruise, tit.* 32, *ch.* 20, §§ 33, 49; *Hobart*, 277; 2 *Wils.* 77; 1 *N. H.* 64; 9 *Fost.* 498; 22 *Me.* 350; 6 *Paige*, 536; 20 *Ohio*, 602; 18 *Mo.* 229; 7 *Mich.* 77. Thus when a power is exceeded it is void only for the excess:—4 *Greenl. Cruise, tit.* 32, *ch.* 17, §47 *and n;* 11 *Humph.* 283; 5 *Gratt.* 110. So when a deed purporting to be signed by two is signed by one only, it is good *pro tanto:*—19 *Geo.* 14.

In accordance with these principles, we can see no reason for holding the deed void as without authority.

DAVENPORT *v.* PARSONS.

3. The third objection is that the deed was not made under the power given in evidence, but purports to be made under a joint power. In the body of this deed there is no reference to any power, nor was any necessary in the signature. It was surplusage. In the execution of powers, it is unnecessary to refer to them: — 4 *Kent*, 334; *Sug. on Pow.* 373; 1 *Rawle*, 249; 18 *Mo.* 229; 3 *Johns. Ch.* 551. When one has two powers over particular property, and does an act without referring to either, its execution will be referred to that one which will support the deed: — *Sug. on Pow.* 375. But if he specially refer to one of those powers, as the one under which he acts, it is an *argument* against his intention to execute the other: *Ibid.* 377; 8 *Ves.* 256, 292; 10 *Ibid.* 246, 258. But in such a case it is only an *argument*. The clear intent to do the act authorized by the other must prevail: — 1 *Sim. and Stu.* 477; 5 *Russ.* 341. In this case but one power is proved. There is a vague reference to a power, as if it might have been a joint one, but the object in view required no joint power, and none over this land is proved to have existed, and the words themselves are indeterminate. The power proved authorizes the act done, and the deed fails of effect unless it is referred to that power. The Court will not refer it to another upon any such vague ground merely to defeat the deed and the clear intent of the parties. Even a mis - recital of a power does not vitiate the deed under it :— 19 *Geo.* 279.

4. The fourth objection, that no title passed because the grantee was one of the grantors, has already been considered.

*A. Felch*, for defendant in error:

1. A deed acknowledged by attorney must be acknowledged as the deed of the principal — the grantor : — 2 *S. & R.* 80; 5 *Pet.* 132; 2 *Hill. Real Prop.* 283; 7 *Mass.* 14; 13 *Pet.* 17; 2 *Cush.* 337; *Pars. on Cont.* 119; 4 *Greenl. Cruise,* 49, *notes.* The cases in 11 *Ala.* 997; 1 *Har. &*

*McH.* 141; 22 *Vt.* 274; 6 *Paige*, 60, all recognize the doctrine that 'the certificate must show that the person making the acknowledgment acted in so doing as the attorney of the grantor, and not in his individual capacity.

2. The power' of attorney given by Emerson did not authorize the making of a joint deed with Pettis. It gives no authority to join Emerson with the owner of other lands, or of distinct interests in the same lands, in a deed of conveyance. If this deed is good, Thomas Emerson is not only made to convey lands that he did not pretend to own, but to join in full covenants of title for the interest claimed therein by a stranger.

An agent can not do even the authorized act jointly with another: — 11 *Gratt.* 269; *Story on Agency*, § 5. Even in the case of a factor, it is his duty to keep the property of his principal unmixed with his own or the property of other persons: — 9 *Beav.* 284; *Story on Agency*, § 179, *n*, 205.

3. The doctrine that a conveyance may be void in part and good in part never applies, unless, 1st. there is a complete execution of the power, and 2d. the boundaries between the excess and the rightful execution are clearly distinguishable: — *Story on Agency*, § 166; 2 *Ves.* 644. Here is no complete execution of the authority, nor indeed any legal execution of it. This related to and authorized only an individual transaction, and that as to individual interests only: the conveyance is a joint transaction relative to another subject matter, and not within the scope of the power. The estates and covenants are also so commingled as to leave no defined line of distinction.

The transaction is moreover tainted with fraud. Where that is the case, the rule never applies: — *Kirby v. Ingersoll*, *Har. Ch.* 172.

The two joint tenants (so the deed shows), appoint by joint letter the same person as attorney to sell the entire property for both. The agent is bound to sell for the best price he can obtain; the union is made for the purpose of

obtaining a higher price for the property than the several interests would bring at separate sales, and each party is bound to the other to use his efforts to sell for the best price. Pettis in becoming the purchaser from the agent of both, violates his plainest duty to Emerson. He uses the influence of his relation to the agent to buy cheap. So far as his share is concerned, it may make no difference what price he pays, but the less the sum the cheaper he acquires the title of his co-tenant. He trades with himself; he cheapens the article by the usual arts of the buyer; he depreciates it by chaffering with his own agent; he is both buyer and seller, and without injury to his original title seeks to obtain Emerson's interest at the lowest possible figures. An agent to sell can not be the agent for a purchaser: — *Moore v. Mandlebaum*, 8 *Mich.* 434. If the attorneys did not act under a joint power, the case is no better. In that event the attorneys had a power from Emerson to sell his joint interest; Pettis, wishing to buy that interest, induces them to become his agent also, and thus after coupling the two interests together, drives his bargain with his own agent.

4. It is manifest from the terms of the offered deed that it was not made under the power of attorney given in evidence. The one referred to in the deed, was a joint power; that proved was by Emerson and wife alone. The deed was therefore a nullity: — 5 *Pet.* 309; 6 *Pet.* 283; 1 *Spencer*, 347.

CHRISTIANCY J.:

Was the deed from Thomas Emerson and Frederick Pettis, purporting to be executed by their attorneys R. H. Waller and Curtis Emerson, to said Frederick Pettis, properly excluded by the Court below?

This is the only question necessary to the decision of this cause.

The deed was objected to on four distinct grounds; but from the view we have taken of the case, we do not

deem it necessary to allude to the second and fourth grounds. of objection, relating to the anomalous character of the deed growing out of the fact that one of the grantors is. also the grantee.

Nor is it necessary to pass definitely upon the form of the acknowledgment, though upon principle, and from the authorities cited, we are inclined to think the acknowledgment would have been sufficient had the deed been otherwise properly executed.

But the fourth ground of objection to the deed is, that it was manifest from the terms of the deed offered in evidence, that the same was not made under the power of attorney given in evidence, but purported to be made under a joint power given by Thomas Emerson and said Pettis, and no testimony was given to establish such joint power.

We think this ground of objection unanswerable. The deed did not purport to be executed by the grantors in person, the owners of the land; its validity must therefore depend entirely upon the power vested in the attorneys by whom it was executed. But to make a valid deed under a power of attorney, it was essential that there should have been an intention on the part of the attorney or attorneys to execute the deed under and by virtue of the power, or at least that the contrary intention should not appear.

Now whatever might be the effect of such a deed as this, if executed by the grantors in person, or whatever may have been their object or that of the attorneys in making Pettis, the grantee, also one of the grantors, the fact that they did intend thus to join them, and that they intended to execute the deed in the name and on behalf of both, is, we think, extremely probable, if not clearly manifest from the face of the instrument and the form of the execution. It would seem therefore to follow that the attorneys must have intended to act either under a joint

power from the two grantors, or a several power from each; though, as we shall presently see, it is not necessary here to determine whether the several power from Thomas Emerson, which was given in evidence, would have authorized the deed had it appeared to have been executed under that power. But the power or powers which would authorize the deed must be given in evidence, or the deed could not be that of either grantor, or in any manner affect the title.

The most natural inference to be drawn from the mode of execution and reference to the power, is that the attorneys intended to act under and refer to a joint power from both the grantors, in whose behalf the deed purports to be executed, and not a separate power from each or either of them; for after affixing the several signatures and seals of each of the grantors named, they add "By their attorneys who sign in virtue of *a power* of attorney."

It is true this may not be a *necessary* inference, which would admit no proof to the contrary; and if two separate powers had been proved, one from each of the grantors named, it is possible this mode of execution and reference might be construed as intended to refer to the two. But the only power introduced in evidence to sustain this deed was that from Thomas Emerson and wife, to which Pettis was not a party.

It would, we think, be going a great ways to hold that this could be the power referred to by the attorneys in executing the deed, had no intimation appeared of the existence of another power which might have been intended by the reference.

But the case is not even so strong as this for the plaintiff in error. It appears from the testimony of his own witness, one of the attorneys named in this power, that when he had this instrument in his possession, he had also another power of attorney, executed to the same attorneys, by both of the grantors and Richard H. Morris

(the latter of whom was dead and his interest vested in the other grantees before this deed was executed). It is true it does not appear what were the contents of this latter or joint power; but from the manner in which it is spoken of by the witness, there would seem to be some probability that it had, or was supposed to have, reference to this land; and this inference is strengthened by the fact that, by a stipulation between the attorneys of the respective parties in the cause, it was admitted "that the signatures to a certain paper purporting to be a power of attorney from Thomas Emerson, Richard H. Morris and Frederick Pettis" to the same attorneys "are genuine." From the nature of the case we should naturally infer that this fact in the stipulation was inserted at the instance and for the benefit of the defendant below (plaintiff in error), as the case of the plaintiff below did not involve the necessity of any power. The inference is very strong, if not conclusive, that this was the same power of attorney spoken of by the witness Curtis Emerson as being in his possession at the same time with that from Thomas Emerson.

We have already remarked that the form of execution of the deed, and mode of reference to the power, would naturally suggest the idea of a single or joint power of attorney, executed by both grantors, under which the attorneys undertook and intended to act in executing the deed, though no such instrument had been alluded to or shown to exist. But with the additional fact that such an instrument was in existence, and in possession of the same attorney, at the same time he held possession of the several power from Thomas Emerson, the inference of an intention to act under and refer to the joint, instead of the several power, becomes very strong. This inference it is true might have been weakened, possibly overcome, by the introduction in evidence of the joint power, if it had appeared to have no reference to the land, or to be so

entirely different in purpose that the attorneys could not probably have intended to refer to it in the execution of the deed, though the mere fact of its invalidity as an authority to convey the land, would not, of itself, take away the inference; because it might have been *supposed* sufficient, whether it were so or not. But the omission to offer it in evidence when its execution had been admitted, and the deed had been objected to for want of a joint power, is a very significant fact, and warranted the inference that, if produced, it would have increased the probability that this was the instrument under which the deed was intended to be executed.

Should it therefore be admitted that the several power introduced in evidence would have authorized the execution of this deed had the attorneys purported or intended to. act under it, still that power could not render *this* deed valid; as they did not purport, and do not appear to have intended, to act under it in the execution of the deed; but it is, to say the least, much more probable that they intended to act, and understood themselves to be acting, under another power not given in evidence, and therefore of no avail in supporting the deed.

We think the deed was properly excluded, and the judgment of the Court below should be affirmed, with costs.

MARTIN CH. J. and MANNING J. concurred.

CAMPBELL J. did not sit in this case.