No. 14,552.

WRIGHT *v.* THE PEOPLE.
(91 P. [2d] 499)

Decided May 1, 1939.

336

Mr. Joseph W. Hawley, for plaintiff in error.

Mr. Byron G. Rogers, Attorney General, Mr. Henry E. Lutz, Assistant, for the people.

*En Banc.*

Mr. Justice Bock delivered the opinion of the court.

The indictment upon which this case is based was returned against plaintiff in error—to whom we will hereinafter refer as defendant—by a grand jury of the third judicial district. It contained four counts, the first of which, omitting the formal parts, reads as follows: "That Sam Wright, late of the County of Las Animas, State of Colorado, then and there being a duly appointed, qualified and acting highway overseer, road foreman and supervisor in Commissioners' District No. 3 of Las Animas County, State of Colorado, at and within the said Las Animas County, State of Colorado, did on or about the 4th day of January, 1938, wilfully, unlawfully, corruptly and feloniously use, make way with, secrete for his own benefit and convert to his own use the sum of $87.00, lawful money of the United States of America, and being a portion of the public funds or moneys of said Las Animas County, Colorado."

The remaining counts are in similar language, except as to dates and the sums of money alleged to have been converted by the defendant. The second count was dismissed during the trial on motion of defendant, who was convicted upon the first, third and fourth counts and sentenced to the penitentiary for a term of not less than five nor more than six years. Final determination is made on a motion for supersedeas.

All counts are predicated upon section 262, chapter 48, C. S. A. '35, which reads as follows: "If any officer appointed or elected by virtue of the constitution of this state, or any law thereof, as an officer, agent or servant

of an incorporated city, town, municipal township, school district, or county, or other subdivision of this state, shall convert to his own use in any way whatever, or shall use, by way of investment in any kind of property or merchandise, or shall make way with or secrete any portion of the public funds or moneys, or any valuable securities by him received for safe keeping, disbursement, transfer, or for any other purpose, or which may be in his possession or over which he may have the supervision, care or control, by virtue of his office, agency or service, or under color or pretense thereof, every such officer, agent or servant shall, upon conviction, be punished by imprisonment not less than five (5) years."

Upon motion of defendant, the people filed a bill of particulars. One of the items relating to count one was, in substance, as follows:

"That Sam Wright, on the 4th day of November, 1937, knowingly, wilfully, fraudulently, corruptly and feloniously presented, or caused to be presented to and approved by the board of county commissioners of Las Animas County, Colorado, a certain voucher or claim purporting to be for and on behalf of one Howard Martin, which said voucher or claim is in the words, figures and of the tenor as follows, to-wit:

"Trinidad, Colorado Oct. 25, 1937.

The County of Las Animas

"To Howard Martin    Dr.

| Date | | Items | Warrant No. | Amount |
|---|---|---|---|---|
| 25 | Labor | Single Hand | Do Not Write | 4.00 |
| 26 | ,, | ,, | ,, | In This Space | 4.00 |
| 27 | ,, | ,, | ,, | | 4.00 |
| 28 | ,, | ,, | ,, | | 4.00 |
| 29 | ,, | ,, | ,, | | 4.00 |
| 30 | ,, | ,, | ,, | | 4.00 |
| Nov. 1 | ,, | ,, | ,, | | 4.00 |
| 2 | ,, | ,, | ,, | | 4.00 |

O. K. by Sam Wright    $32.00

State of Colorado,      } ss.
County of Las Animas. }

I, ........................, being first duly sworn, both depose and say that the above amount is legal, just and true, and that the articles furnished and service rendered therein charged for and have been actually and necessarily furnished and rendered to and for said county, and the sum claimed, to-wit: $32. is due and unpaid.

Howard Martin

Subscribed and sworn to before me this 4 day of Nov. 1937.

Robert S. Gregory<br>Deputy County Clerk of Las Animas

(Notarial Seal)   County, Colorado, Notary Public.

"That by reason of the aforesaid acts of said Sam Wright said voucher or claim was presented and allowed by the board of county commissioners of said Las Animas county as a just and true account; that said Sam Wright well knew that in truth and in fact that Howard Martin did not during the month of October and November, 1937, perform any labor or services for said Las Animas county, and that said Las Animas county, Colorado, was not indebted to said Howard Martin in the sum of $32.00, or any sum whatever, or at all, and the said Sam Wright, by reason of the aforesaid acts and by reason of said false and fraudulent voucher or claim, did, knowingly, wilfully, fraudulently, corruptly and feloniously procure and receive a certain county warrant, and the proceeds thereof, belonging to said Las Animas county and of the value of $32.00 lawful money of the United States of America."

The record does not disclose any ruling by the trial court on the sufficiency of the bill of particulars.

Briefly, the facts presented at the trial were to the effect that the defendant was acting as foreman for a few years prior to April, 1938, over a crew of workmen varying in number from 100 to 250, in district No. 3 of Las Animas county, in a territory some 75 miles east of Trinidad, the county seat.

The transaction here involved commenced about in December, 1937, and continued to and included March, 1938. Weekly vouchers were issued by defendant to the men working under him and he each week, for the convenience of the men, would take these vouchers to the county seat and cash them at a discount of ten per cent, with the understanding that he would pay the amounts received to the parties whose names appeared on the vouchers. The vouchers were not cashed with public funds of the county, but money was left by those wishing to buy county warrants with the deputy clerk at the office of the county commissioners, which was used to purchase vouchers from any persons presenting them, at their face value, less ten per cent. In the event that no money was left in the office of the county commissioners by prospective purchasers of county warrants, defendant would contact such purchasers in person and receive the money directly from them instead of at the office of the county commissioners. After vouchers were received by the deputy clerk of the board of county commissioners, the clerk would issue a county warrant on the voucher to the party whose money was used in cashing the voucher. Usually, this was a cash warrant, good for its face value and cashable forthwith. The purchaser would receive full cash value for the voucher and warrant. No county warrants were at any time delivered to defendant, and there is no direct evidence that he ever received any of the money obtained on the warrants for his own use. There is testimony by handwriting experts that the signatures to some of the vouchers involved herein were in the handwriting of the defendant, and it appears that a clerk in the office of the board of county commissioners notarized the signature of the party whose name appeared on the voucher without such party appearing in person before him, whenever the O. K. of the defendant was written thereon. To prove that some of the names on the vouchers were fictitious, evidence was introduced showing that the parties named were unknown in and

around the territory where the work was alleged to have been performed as designated in the vouchers. Some of the vouchers upon which pink warrants were issued were not subject to immediate payment, but were registered, and at the time of the trial had not been paid by the county. Eleven persons whose names appeared on the vouchers, upon which warrants were issued to the purchaser, remained unidentified, the testimony disclosing that they were not known by witnesses who resided at various places in Las Animas county.

Numerous errors are assigned, but in view of the conclusion we have reached, we need consider but one question, namely: Did defendant, as an officer or agent of the county, receive any public funds belonging to it?

Our attention first is directed to the bill of particulars, hereinabove partially set out. It will be noted that alleged therein is an entirely different offense than that contained in the indictment. The bill of particulars was presented voluntarily after motion for the same was made by defendant and without an order by the trial court that such a writing be filed.

In the motion for bill of particulars defendant asked: "Whether or not the money which he is charged with having made way with, secreted and converted to his own use was received by said defendant," and "Whether or not the money referred to in each of the counts of the indictment was in his possession or under his supervision, care or control by virtue of his office, agency or service, or under color or pretense thereof." The people failed to furnish this information in the bill of particulars, and objection based upon such failure was not raised until after conviction and in the motion for a new trial.

■■ The offense set out in the bill of particulars appears to be obtaining money and warrants by means of false pretenses. It is fundamental that a defendant can be tried only on the charge contained in the indictment, and not for any other offense. "A bill of particu-

lars is not a part of an indictment or information, nor an amendment thereto. The sole office of the bill of particulars is to give the adverse party information which the pleadings, by reason of their generality, do not give. * * * It cannot change the offense charged nor in any way aid an indictment fundamentally bad, although it may remove an objection upon the ground of uncertainty." 31 C. J. 752, 753. *United States v. Tubbs,* 94 Fed. 356; *May v. United States,* 199 Fed. 53-61.

▮ Assuming, but not expressly deciding, that defendant was an officer or agent within the meaning of section 262, supra, did he, as such, receive any public funds belonging to the county? Our answer must be in the negative. Said section charges an offense in the nature of embezzlement. We point out in *Phenneger v. People,* 85 Colo. 442, 276 Pac. 983, quoting from 20 C. J. 414, §4, the elements necessary to be established before one may be found guilty of that crime. One of the elements is, "That the accused occupied the designated fiduciary relation, and that the property came into his possession and was held by him by virtue of his employment or office." This element is expressly recited in section 262, supra, and we again call attention to the pertinent language of that section—"public funds or moneys * * * by him received for safekeeping, disbursement, transfer, or for any other purpose, or which may be in his possession or over which he may have the supervision, care or control, by virtue of his office, agency or service, or under color or pretense thereof."

It is clear from the record that the moneys here charged to have been received by defendant were not public funds of the county, but was money belonging to the purchaser of warrants to be issued under the vouchers presented by the defendant. The money was paid to defendant either by the agent of the purchaser or the purchaser, and at no time or in any instance was it received by the defendant in any official capacity whatever. His action in presenting vouchers for others who

were employed by the county was solely for their convenience. No public money came into his possession; none was held by him by virtue of his employment or office. It is only where an officer appointed or elected by virtue of the Constitution or some statute of the state who receives or has in his possession public money, and thereafter converts the same to his own use, that this section is applicable. *State v. Walsen,* 17 Colo. 170-175, 28 Pac. 1119.

In *United States v. Mason,* 218 U. S. 517, 31 Sup. Ct. 28, 54 L. Ed. 1133, a clerk of the district court of the United States was indicted for embezzlement. Out of the funds which came into his possession he was lawfully permitted to take a certain amount as his salary, the surplus to be accounted for to the United States. In sustaining a demurrer to the indictment in that case the court said, at page 531: ''The amount with which the clerk is chargeable upon his accounting is not the 'public money' or 'the money or property of the United States' within the meaning of their provisions. The fees and emoluments are not received by the clerk as moneys or property belonging to the United States, but as the amount allowed to him for his compensation and office expenses under the statutes defining his rights and duties, and with respect to the amount payable when the return is made the clerk is not trustee but debtor.''

So in the instant case, the amount received by the defendant was not public money within the meaning of section 262, supra. The money received by him never was a part of the public funds of the county; it belonged to prospective purchasers of warrants. There is no evidence that the county commissioners ever authorized defendant to receive any public funds or money for safe-keeping, disbursement, transfer or for any other purpose, or to dispose of any public money which he may have had in his possession or over which he might have had supervision, care or control; nor is there any evidence that he was ever appointed or elected for such purpose.

Whatever may be said of the conduct of the defendant, the testimony introduced in support of the indictment does not sustain his guilt of the crime charged. We do not say that defendant may not be guilty of some crime. We leave that question to those charged with the duty of prosecuting for the violation of criminal offenses. That the practice disclosed by the evidence was reprehensible is true. We note, however, from the record before us that this practice has been discontinued.

In view of our conclusions, it is not necessary to discuss other matters raised. The motion for a directed verdict should have been granted. In denying the motion the trial court committed error.

The judgment is reversed, and the cause remanded, with instructions to dismiss the indictment and discharge the defendant.

Mr. Justice Francis E. Bouck not participating.