# STATE v. THOMAS F. MEANY.

## 115 N. W. (2d) 247.

### May 18, 1962—No. 38,264.

*Dorfman & Rudquist,* for appellant.

*Walter F. Mondale,* Attorney General, *George M. Scott,* County Attorney, and *Thomas M. Bambery,* Assistant County Attorney, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying defendant's motion for judgment of acquittal notwithstanding the verdict or, in the alternative, for a new trial.

Defendant was indicted by the Hennepin County grand jury on February 9, 1960, for the crime of criminal negligence. The jury returned a verdict of guilty, as hereinafter set forth.

The charge arose out of an automobile accident in the village of Bloomington on January 28, 1960, when an automobile driven by defendant struck and killed Patricia Sands, a young girl walking either on the highway or adjacent to it. The accident occurred about 6:20 p. m. on East 86th Street between 12th Avenue South and 13th Avenue South.

The facts essential to a determination of the issues involved may be stated as follows: Defendant was employed as a special assistant in the office of the attorney general assigned to Highway Department condemnation cases. On January 28, 1960, defendant worked in his office in the morning and until about 12:30 p. m. He had lunch with two of his associates at Fran O'Connell's, a restaurant in St. Paul. They had some cocktails while there. They left at 1:15 p. m. and defendant and one of his associates spent the afternoon inspecting some land on Lexington Avenue. At about 4:15 p. m. defendant and

his companion had two, or possibly three, drinks at Napoleon's on University Avenue. They left there about 5 p. m., and defendant was dropped off by his companion at the Highway Building, where he procured his car and proceeded to his home in Bloomington, some 14 miles away.

Patricia Sands, age 11 years, left her home at 8320 10th Avenue South in Bloomington about 6 p. m. to go skating with four of her girl friends about the same age. The girls, all carrying white skates and dressed in skating attire, proceeded down East 86th Street. Patricia was wearing a white fur headpiece, a red jacket, red corduroy jeans, and white boots and gloves.

East 86th Street is level at the place of the accident. The blacktop portion of the highway is 35 to 36 feet in width. A part of the edge of the highway was covered with snow, the exact depth of which does not appear from the record. The lighting was described by various witnesses as very good, fairly dark, and quite dark. There were street lights on the corners of 12th Avenue South and 13th Avenue South. The accident happened about the middle of the block.

Between 12th Avenue South and 13th Avenue South, the girls were walking abreast, about 4 feet out into the snow-covered blacktop portion of the highway. Defendant testified that as he approached the intersection a small radio which he carried slipped from the dashboard of his car, and he bent down to reach for it, momentarily taking his eyes off the road. When he looked up he saw a girl on his left and pulled his car to the right to avoid hitting her, and as he did so he saw other girls. He swerved back to the left onto the road, heard a noise, which obviously occurred when he struck Patricia, panicked, and left the scene of the accident without stopping. He was apprehended at his home about 3 o'clock the next morning, after police had made an extensive investigation and matched a broken part of the parking light lens found at the scene of the accident with other parts remaining on his car.

Defendant testified that prior to the accident he was traveling about 20 to 25 miles per hour. He had been followed for about six blocks by a car driven by Patricia Hedin, with whom Shirley Miller was riding as a passenger. They testified that they saw nothing unusual

about defendant's car until he swerved to the right. The first time they saw the girls was after defendant swerved and hit Patricia Sands. They were then about half a block behind defendant, and they testified that they were going about 25 to 30 miles per hour.

It is undisputed that defendant's vehicle hit Patricia Sands with its left front parking light. Her body was found perpendicular to the road, with her feet just about touching its edge. She apparently died instantly.

Fragments of defendant's parking light lens were found 8 to 4 feet from the northerly edge of the road.

The description of the accident by the girls who were with Patricia was to the effect that "all of a sudden" a car swerved off the road and came directly toward them. Leslie Parsons, one of the girls, was also struck by the automobile and was found next to the street, north of the road and about 56 feet east of decedent. The girls testified that when they saw the car veer toward them they ran but the car hit Leslie nevertheless.

At the outset of the trial defendant admitted in the chambers of the court that he was the driver of the car that struck and killed Patricia Sands.

The questions requiring our consideration are: (1) Was the indictment sufficient to charge a criminal offense? (2) Assuming that the indictment is sufficient to charge an offense, was the conviction based on acts not charged in the indictment? (3) Did the court err in it instructions that will be discussed hereinafter or was defendant deprived of a fair trial by misconduct of the prosecuting attorney and the failure of the court to remove the prejudice created thereby in its charge to the jury? (4) Was defendant deprived of a fair trial by the court's assurance to the jury that he would give consideration to a recommendation of leniency?

■ The crime of criminal negligence is defined in Minn. St. 169.11 as follows:

"Any person who by operating or driving a vehicle of any kind in a reckless or grossly negligent manner causes a human being to be killed, under circumstances not constituting murder in the first, sec-

ond, or third degree, or manslaughter in the first or second degree, is guilty of criminal negligence in the operation of a vehicle resulting in death."

The meanings of the terms "reckless" and "grossly negligent," as used in this statute, are exhaustively reviewed in State v. Bolsinger, 221 Minn. 154, 21 N. W. (2d) 480. While the opinion in that case is quite involved, the definition of the term "reckless" is taken largely from § 169.13, and the meaning ascribed to the word in that case has been consistently followed since. In the Bolsinger case we held that "reckless" means in such a manner as to indicate either a willful or wanton disregard for the safety of persons or property. That means conscious and intentional driving which the driver knows, or should know, creates an unreasonable risk of harm to others. It does not mean that the driver must be personally conscious of his wrongdoing. It is sufficient that he ought to realize the fact. Intentional conduct, but not intentional harm, is what is meant. We concluded there (221 Minn. 158, 21 N. W. [2d] 485):

"* * * In short, in order to constitute the crime in question by reckless driving, the accused must have known, or should have known, that his manner of driving the vehicle created an unreasonable risk of harm, but he need not have intended to cause harm."

■ Our definition of "grossly negligent" in the Bolsinger case was taken largely from Massachusetts cases from which we quoted with approval. Briefly stated, we concluded that "grossly negligent," as used in our criminal negligence statute, means with very great negligence or without even scant care but not with such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong.

■ Proof of either reckless driving or grossly negligent driving will sustain a conviction under this statute. While the indictment in the present case uses the conjunctive "and," the statute uses the disjunctive "or." Whether the indictment in this respect is defective· we need not now determine.

■ · Defendant contends that the indictment is insufficient to charge any offense. The indictment, as far as material, reads:

"The said Thomas F. Meany on the 28 day of January, A. D. 1960, at the Village of Bloomington in said Hennepin County, Minnesota, then and there being did wilfully, unlawfully, wrongfully and feloniously and in a reckless and grossly negligent manner, drive a certain motor vehicle, to-wit: a 1957 Ford automobile, a more particular description of said motor vehicle being to the Grand Jury unknown, in a general westerly direction along and upon 86th Street at a point between 13th Avenue South and 12th Avenue South, said street and avenues being public streets and highways in the said Village of Bloomington, County of Hennepin; that at said time and place one Patricia Sands, a human being, was a pedestrian walking in an easterly direction in, upon or near the northerly edge of said 86th Street; that the said motor vehicle was then and there driven and operated by the said Thomas F. Meany in a reckless and grossly negligent manner *in this,* that the said Thomas F. Meany did fail to keep a proper lookout for pedestrians in, upon and near the northerly edge of the said 86th Street, and did fail to keep his said motor vehicle under proper control, and did drive and operate said motor vehicle to the north of and off the roadway of the said 86th Street * * *." (Italics supplied.)

Thereafter the indictment alleges that, while so driving, defendant struck and killed Patricia Sands.

In State v. Bolsinger, 221 Minn. 154, 171, 21 N. W. (2d) 480, 491, we held that an information charging the offense of criminal negligence in the language of the statute is sufficient. We there said:

"* * * It is claimed that the information is insufficient because it charges, in the language of the statute, that the operation and driving of the automobile was in a 'reckless' and 'negligent manner' without alleging the specific facts showing why it was 'reckless' or 'negligent.' An indictment or information setting forth the offense charged in the language of the statute is sufficient where the statute sets forth the elements of the offense and the statutory language according to its natural import is fully descriptive of the offense. State v. Eich, 204 Minn. 134, 282 N. W. 810; State v. Omodt, 198 Minn. 165, 269 N. W. 360. The words 'in a reckless' and 'grossly negligent manner' are

descriptive of the offense and not mere conclusions. As pointed out above, the use of the words 'reckless' and 'grossly negligent' sufficiently convey to the court and jury what is meant. An information, as here, charging the offense in such language is sufficient."

Here, however, the indictment, after charging the offense in substantially the language of the statute, went further by stating specifically what acts of defendant the state contends constituted a violation of the statute. In the Bolsinger case we also said (221 Minn. 172, 21 N. W. [2d] 491):

"Where more specific allegation is necessary to enable an accused to defend, a bill of particulars will be granted upon a proper showing. Here, no such demand was made."

It is apparent that in that case we recognized the general rule that an accused may be granted a bill of particulars if the circumstances warrant it.[1] In State v. Poelaert, 200 Minn. 30, 37, 273 N. W. 641, 645, the rule with respect to the right to a bill of particulars is stated as follows:

"* * * The rule is that where the offense is of a general nature and the charge is in general terms the prosecution may be required to file a specification of the particular acts relied on to sustain the charge. [Citing authorities.] If an indictment is so general that it fails to give defendant adequate notice of the charge, the court should require a bill of particulars. The propriety of such a requirement depends upon the facts of the particular case. The matter rests largely in the discretion of the trial court."

See, also, State v. Wassing, 141 Minn. 106, 111, 169 N. W. 485, 487. The granting or denial of a bill of particulars rests largely in the discretion of the trial court.[2]

---

[1]See, Annotation, 5 A. L. R. (2d) 444, 448; 27 Am. Jur., Indictments and Informations, § 111.

[2]State v. Poelaert, 200 Minn. 30, 273 N. W. 641; Annotation, 5 A. L. R. (2d) 444, 447; Roberson v. United States (5 Cir.) 249 F. (2d) 737, 72 A. L. R. (2d) 434.

The purpose of a bill of particulars is to enable the defendant to prepare for trial and to know the particular transactions intended to be proved under the information or indictment and to limit the evidence to the items and transactions stated in the bill of particulars. In the frequently cited case of People v. McKinney, 10 Mich. 53, 93,[3] the court said:

"* * * Its only purpose and effect are to inform the defendant of the nature of the evidence and the particular transactions intended to be proved under the information, and to limit that evidence to the items and transactions stated in the particulars."[4]

The applicable rule limiting proof to the acts specified in a bill of particulars applies with even more rigor where the acts upon which the state relies for conviction are specified in the indictment or information itself. When an indictment, which could be sufficient if it alleged the commission of the crime in the language of the statute alone, goes further and specifies the acts of the defendant upon which the state relies for a conviction, the defendant has a right to rest his defense upon a lack of proof by the state of the commission of the acts specified. In State v. Ring, 29 Minn. 78, 80, 11 N. W. 233, 234, we said:

"* * * It was not necessary to allege all such proceedings. The indictment is sufficient in that respect, if it alleges the fact that Baumhager was such officer, and the successor in office of the defendant, and if those allegations are not qualified by particular averment of the proceedings by which he became such. If, however, it appears that the pleader has assumed to set forth the successive steps upon which the ultimate fact rests, the particular statement of facts controls the general allegation as to the result."

---

[3]See, McDonald v. People, 126 Ill. 150, 18 N. E. 817, 9 A. S. R. 547; State v. Wadford, 194 N. C. 336, 139 S. E. 608.

[4]See, also, 27 Am. Jur., Indictments and Informations, § 112; Annotations, 8 A. L. R. 556 and 10 A. L. R. 983; 42 C. J. S., Indictments and Informations, § 156d; United States v. Neff (3 Cir.) 212 F. (2d) 297; United States v. Pillsbury Mills, Inc. 18 F. R. D. 91; Roberson v. United States (5 Cir.) 249 F. (2d) 737, 72 A. L. R. (2d) 434.

500

In State v. Farrington, 59 Minn. 147, 150, 60 N. W. 1088, 1089, 28 L. R. A. 395, 399,[5] we said:

"* * * The general allegations in the indictment must be deemed to be controlled and qualified by the allegations of specific facts upon which the general allegations are predicated. * * * Having assumed to set out specifically the facts constituting Firth's right to the money, it was incumbent on the state to allege facts sufficient to show that right."

The rule is well stated in State v. Schuling, 216 Iowa 1425, 1428, 250 N. W. 588, 589, as follows:

"* * * The crime may be charged by its name. In that event the defendant is entitled to a bill of particulars. If he asked for no bill of particulars, the state could undoubtedly convict him upon proof of any acts constituting the offense named. But if a bill of particulars was asked for and filed, the state would be limited to proof of the acts indicated in such specifications. *If, in order to obviate the necessity for a bill of particulars, the state includes the particulars in the indictment, the defendant has a right to rely upon the acts alleged as constituting the offense with which he is charged.*" (Italics supplied.)

In the later case of State v. Haesemeyer, 248 Iowa 154, 159, 79 N. W. (2d) 755, 758, the Iowa court again said:

"It may be the State was not required to allege the means by which the offense was committed. * * * But having done so, it had the burden to prove defendant's guilt substantially as alleged."

See, also, State v. Essex, 217 Iowa 157, 250 N. W. 895; Wright v. People, 104 Colo. 335, 91 P. (2d) 499, 123 A. L. R. 474.

In overruling the defendant's demurrer to the indictment, the trial court recognized the above rule and assured defendant that the state would be limited to proof of the acts specified in the indictment. In its memorandum overruling the demurrer the trial court said:

"While the indictment would have been sufficient without the par-

[5]Cited with approval in Scott v. United States (10 Cir.) 78 F. (2d) 791.

ticularizing allegations, I think that with them it is better from the standpoint of the defendant. My reasons for making this comment are that the indictment, as it is, apprises the defendant of specific acts that the State bases its prosecution on and also that *at the trial the State will be limited to proof of such acts on the issue of gross negligence.* The law is well settled that where general allegations of negligence are followed by allegations of specific acts of negligence, the former are qualified and restricted by the latter." (Italics supplied.)

While the court in support of the above statement cites Willison v. N. P. Ry. Co. 111 Minn. 370, 127 N. W. 4; Gile v. Yellow Cab Corp. 177 Minn. 579, 225 N. W. 911; and Wiseman v. N. P. Ry. Co. 214 Minn. 101, 7 N. W. (2d) 672, all of which involved civil actions, we think it is apparent that the same rule applies in a prosecution for a crime. In State v. Ring, 29 Minn. 78, 11 N. W. 233, for instance, we relied on Pinney v. Fridley, 9 Minn. 23 (34), which was a civil action.

It follows that under these rules, once the state alleged specific acts upon which it relied for conviction in the indictment, it was limited to proof of those acts. The acts alleged are: (1) That defendant failed to keep his motor vehicle under proper control; (2) that he failed to keep a proper lookout; and (3) that he drove his automobile to the north of and off the roadway.

■ Defendant challenges the sufficiency of the indictment, contending that none of the three acts upon which the state relies to establish the crime constitutes more than ordinary negligence. With this we cannot agree. It is conceivable that any of the three acts alleged could constitute criminal negligence if proved to have been done in a reckless or grossly negligent manner, as those terms have been defined herein. All of the cases we have passed upon under our criminal negligence statute involve either intoxication or excessive speed.[6] That does not mean

---

[6]State v. Cook, 212 Minn. 495, 4 N. W. (2d) 323; State v. Clow, 215 Minn. 380, 10 N. W. (2d) 359; State v. Bolsinger, 221 Minn. 154, 21 N. W. (2d) 480; State v. Homme, 226 Minn. 83, 32 N. W. (2d) 151; State v. Brady, 244 Minn. 455, 70 N. W. (2d) 449; State v. Anderson, 247 Minn. 469, 78 N. W. (2d) 320; State v. Ewing, 250 Minn. 436, 84 N. W. (2d) 904.

that there are not other acts that can be done in such a reckless or grossly negligent manner as to constitute commission of the crime of criminal negligence.

■ The case was tried before a trial judge who did not pass on the demurrer. A great deal of the evidence in a voluminous record pertains to investigations made by police officers in an effort to locate the hit-run driver who killed Patricia Sands. Prior to the trial, defendant admitted that it was he who struck and killed the girl. He also admitted that he left the scene of the accident. He has since entered a plea of guilty to that charge and served a sentence in jail.

While flight is admissible to establish a consciousness of guilt,[7] we think that the prosecution here was permitted entirely too much liberty in showing the facts respecting the investigation and apprehension of defendant. Obviously, this evidence was intended only for the purpose of creating prejudice by establishing an entirely separate crime, that of leaving the scene of an accident after it had occurred.

■ There are, however, more serious errors in the trial. Intoxication was not specified in the indictment, nor was there any evidence of it. It was shown that during the noon hour and late afternoon defendant and some others did have a few drinks of intoxicating liquor. There was absolutely no evidence, opinion or otherwise, that he was intoxicated, either during the afternoon or immediately prior to this accident. In spite of this lack of evidence, the prosecuting attorney was permitted to argue to the jury that they could draw an inference that defendant was intoxicated and for that reason ran away from the accident.

An inference is a permissible deduction the factfinder is entitled to draw from the proven or admitted facts. It cannot be based on a mere suspicion that unproved facts may exist. The facts may be established by circumstantial evidence, but where there is no evidence, direct or circumstantial, to support an inference any conclusion based thereon becomes merely a conjecture.[8]

---

[7]See, 2 Wigmore, Evidence (3 ed.) § 276.

[8]21 Wd. & Phr. (Perm. ed.) p. 572; Puget Sound Elec. Ry. v. Benson (9 Cir.) 253 F. 710; Juchert v. California Water Service Co. 16 Cal. (2d) 500, 106 P. (2d) 886; see, 1 Wigmore, Evidence (3 ed.) § 41; New York Life Ins. Co. v. McNeely, 52 Ariz. 181, 79 P. (2d) 948.

In Albert Lea Ice & Fuel Co. v. United States Fire Ins. Co. 239 Minn. 198, 204, 58 N. W. (2d) 614, 618, we quote with approval from Hiber v. City of St. Paul, 219 Minn. 87, 91, 16 N. W. (2d) 878, 880, the following:

"* * * The rule against conjectural and speculative opinions is aimed at those not based upon a factual foundation and not at those which are. The distinction is between inference and conjecture. As Lord Shaw said in Kerr or Lendrum (Pauper) v. Ayr Steam Shipping Co. Ltd. [1915] A. C. 217, 233: 'The distinction [between an inference and a conjecture] is as broad as philosophy itself. It is that an inference rests upon premises of fact and a conjecture does not.' "

■ Even if proof of intoxication would support a conviction under the indictment here—which it would not for failure to allege it as one of the acts upon which the ultimate fact rests—an inference that defendant was intoxicated entirely lacks evidentiary support to sustain it.

The following statements of the prosecutor are illustrative of the impropriety of much of his argument:

"May I suggest that in all sincerity that the real reason, the real reason he didn't stop, the real reason for taking off in a hurry, the real reason for getting home and putting his car in the driveway and not remembering what he did with his coat, the real reason is that he had been drinking too much. That doesn't require any great imagination upon your part.

* * * * *

"Among the *inferences which I think we are entitled to draw* from the fact that he did leave, among other things, is that he was so intoxicated that he didn't want to be found in the area. It wasn't the matter of being scared or panicky. Do you suppose—and again I appeal to your common sense, because this is all that it takes—do you suppose that this defendant, being an experienced trial lawyer, would be assigned to the Department of Highways involving the trial of condemnation matters, appearing before juries such as yourself, and before courts such as His Honor, Judge LaBelle, would be assigned to those duties if he were the type who would get scared or who would panick?" (Italics supplied.)

Defendant requested the following instruction, among others:

"You, the jury, are further instructed that it is not illegal to drink alcoholic beverages and then to drive an automobile in the State of Minnesota. I further instruct you that as a matter of law that under the evidence in this case, the defendant was not operating his automobile under the influence of an alcoholic beverage at the time the accident occurred. He has not been so charged in the indictment, and there is no proof by the prosecution, that is the State, of the defendant having operated his automobile under the influence of an alcoholic beverage, and I therefore instruct you that it is not an element of the charge of criminal negligence in this case."

While the request may have been prolix, defendant was entitled to an instruction containing the substance of the request. This is especially true in view of the argument of the prosecutor. Intoxication was not charged as one of the elements of the crime, nor was there any proof of it. The jury, nevertheless, was left with the impression that it could base a finding of defendant's guilt on an inference that he was intoxicated.

■ The trial court also instructed the jury on the law pertaining to the establishment of ordinary negligence. Among other things, the statutes pertaining to speed were read to the jury. Here, again, excessive speed was not alleged in the indictment as one of the acts upon which the state intended to rely. Among other things, the court read to the jury Minn. St. 169.13, subd. 1, which reads as follows:

"Any person who drives any vehicle in such a manner as to indicate either a wilful or a wanton disregard for the safety of persons or property is guilty of reckless driving * * *."

That section was properly submitted, but the court also read § 169.13, subd. 3, as follows:

"No person shall operate or halt any vehicle upon any street or highway *carelessly* or heedlessly in disregard of the rights or the safety of others, or in a manner so as to endanger, or be likely to endanger, any person or property." (Italics supplied.)

A violation of subd. 3 does not establish criminal negligence; that

provision encompasses only a definition of one of the grounds for a finding of ordinary negligence. Carelessness is synonymous with ordinary negligence.[9]

Many other statutes pertaining only to the establishment of ordinary negligence—such as those governing turning and starting, vehicle lighting, and other things not involved in the indictment—were given to the jury.

Instructions pertaining to rules of the road used in the establishment of ordinary negligence must be given to a jury in a prosecution for criminal negligence with care and only for the purpose of pointing out the difference between establishing ordinary negligence in a civil action and criminal negligence in a prosecution of this kind. That the jury was confused by these instructions is apparent from the fact that it returned for additional instructions. At one point the forelady of the jury asked this question:

"The Forelady: * * * There was some controversy about the speed of the defendant's vehicle, and also the right of the pedestrian as far as oncoming traffic from the opposite direction is concerned.

"The Court: Well, what is it you want, the statute read over again with reference to the pedestrian?

"The Forelady: Yes, and then too the speed of the vehicle in question."

Thereafter, the court reread to the jury the statutes pertaining to speed, even though excessive speed was not specified in the indictment. At another time this transpired:

"A Juror: * * * You mentioned something—we'd like to have read in regard to if Patty Sands—you mentioned something about Patty Sands, if she was negligent, does that have anything to do as far as being negligent? That was really what—I think that was the gist of it, wasn't it?

"The Forelady: Well, that too.

"A Juror: In other words, if she happened to be in the roadway,

---

[9]State v. Hayes, 244 Minn. 296, 70 N. W. (2d) 110; Smith v. Hubbard, 253 Minn. 215, 91 N. W. (2d) 756.

was it her fault and not his, and *was he not negligent?*" (Italics supplied.)

It is apparent that the jurors throughout were confused by the court's instructions and that they may well have found defendant guilty because of an act which would constitute only ordinary negligence or against which he was not required to defend under this indictment. ▮ After the jury had deliberated for almost 2 hours and 40 minutes they returned for the additional instructions discussed above. After another 2½ hours, they returned again for additional instructions. The following then transpired:

"The Forelady: Your Honor, we were wondering if it would be practical or is it a practice to submit a verdict of guilty asking the Court's leniency?

"The Court: Well, you can if that will be done. The Court certainly would take the recommendation, if you give it considerable thought. Is that all that you have?

"The Forelady: I believe that is all, Your Honor."

Defendant contends that it was reversible error for the court to advise the jury that he would consider their recommendation of leniency. Inasmuch as there must be a new trial, we wish to point out that, in answer to such a question, the jury should be told that the matter of fixing punishment is not their concern; that the responsibility for fixing the punishment rests with the court; and that the sole function of the jury is to determine the guilt or innocence of defendant.

After the above transpired, the jury arrived at a verdict some 20 hours after initially retiring. The verdict was:

"We, the jury in the above entitled action, find the defendant guilty as charged in the indictment, with recommendation to provide leniency."

While we have not had occasion to pass on the effect of the court's assurance to the jury that a recommendation of leniency would be given consideration, courts of other jurisdictions have done so on a number of occasions. The almost universal holding is that it is reversible error for the court to assure the jury that a recommendation of leniency would be followed.

In State v. Kernan, 154 Iowa 672, 135 N. W. 362, the facts are almost identical with those in the case before us. There, after the case was submitted and the jury had been out all night, they came back and asked the court if they could make a recommendation. The court said that (154 Iowa 674, 135 N. W. 363)—

"* * * 'while it is not usual, and some of the judges objected to a recommendation, it didn't, and they might do so, and he would consider such recommendation.' The jury then retired and on the same day returned a verdict of guilty, and recommended 'the clemency of the court and that the sentence be made as light as possible.' "

In reversing, the Supreme Court of Iowa said (154 Iowa 674, 135 N. W. 363):

"* * * Though doubtless not so intended, what occurred was well calculated to influence the verdict of the jury. Indeed, that the court's response would be so used was to be inferred from the inquiry. As contended, no promise was made save that the 'recommendation would be considered,' but, from what was said, the jury might well have understood that it would be favorably considered, and at least that it would be weighed in pronouncing judgment. It amounted to holding out an inducement to the jury to agree upon a verdict, although under the indeterminate sentence law such recommendation might not have been given the slightest consideration, for, in any event, the maximum penalty must have been imposed."

In reversing a conviction, the Michigan Supreme Court, in People v. Warner, 289 Mich. 516, 520, 286 N. W. 811, 813, said:

"An unauthorized recommendation to leniency does not render a verdict void for it may be treated as mere surplusage. But an authorized recommendation to leniency, quickly acted upon, discloses that the verdict was influenced thereby.

\* \* \* \* \*

"Defendant was entitled to a fair trial and to a verdict by the jury upon the evidence without consideration of the punishment to be administered.

"See State v. Doucet, 177 La. 63 (147 South. 500, 87 A. L. R.

1356); State v. Kiefer, 16 S. D. 180 (91 N. W. 1117, 1 Ann. Cas. 268); Territory of New Mexico v. Griego, 8 N. M. 133 (42 Pac. 81); McBean v. State, 83 Wis. 206 (53 N. W. 497)."

See, also, United States v. Louie Gim Hall (2 Cir.) 245 F. (2d) 338.

We think that the only safe rule is that, if a jury makes a recommendation without any assurance from the trial court that it will be given consideration, such recommendation is mere surplusage, but, if the court assures the jury that a recommendation for leniency will be given consideration, the possibility that the verdict is motivated somewhat by such assurance is so great that it ordinarily should be enough to vitiate the verdict. Such assurance should not be given.

The vice of this conviction is that the jury could, and in all probability did, convict on evidence and instructions of the court completely at variance with the charges contained in the indictment. No matter what we may think of a person who leaves the scene of a serious accident, everyone is entitled to a fair trial based upon established principles of law.[10] We are convinced that defendant in this case was deprived of such.

Reversed and new trial granted.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.

---

[10]State v. Haney, 222 Minn. 124, 23 N. W. (2d) 369.